David W. WORLLEDGE, Buford Guittar, Russell Wagner, Nel Brattin and Ernest Mullinex, Appellants,

v.

The CITY OF GREENWOOD, Missouri, Everett Carlson, Don Browne, Carroll West, Ralph Berger and Bob Carroll, Respondents.

No. WD 32182.

Missouri Court of Appeals, Western District.

Jan. 12, 1982.

James S. Cottingham, Kansas City, for appellants.

Roger W. Calton, James B. Deutsch, Kansas City, for respondents.

Before TURNAGE, P. J., and PRITCH-ARD and CLARK, JJ.

CLARK, Judge.

This action by citizens of Greenwood, a fourth-class city in Jackson County, sought a permanent injunction to prohibit the board of aldermen of the city from dismissing personnel in the police department and from contracting with Jackson County for municipal police services. The trial court issued a temporary injunction but ultimately denied relief and plaintiffs appeal. Affirmed.

Prior to the events at issue here, Greenwood was served by a full-time police chief and a number of part-time reserve officers. The option for an appointed police chief rather than an elected city marshal, either of which is authorized under § 79.050, RSMo 1978,[1] had been selected by the voters of Greenwood at an election in 1972. Appointment of the chief and department officers is by the board of aldermen.

1. All statutory references are to RSMo 1978.

§§ 79.050 and 85.620. The present controversy was precipitated in 1979 when the board of aldermen discharged the police chief and reserve officers then serving and announced an intention to contract with Jackson County for municipal law enforcement in Greenwood through services by the sheriff.

Budgetary constraints significantly influenced the decision by the aldermen. Financing for the Greenwood police department had been provided in a large measure by federal funds but that aid was discontinued. Other small municipalities in Jackson County had successfully employed the sheriff's services for local law enforcement more economically and the Greenwood aldermen decided to pursue a similar course. In broad outline, the arrangement contemplated a contract with the county specifying the hours of patrol and particular services to be performed. The charge would be calculated accordingly and sufficient deputies would be hired and assigned by the sheriff to perform the work.

Plaintiffs filed suit to restrain the board of aldermen from entering into the contract with Jackson County contending that the board was without statutory authority to contract with another governmental agency for police protection in Greenwood. Although the police chief and officers had by that time been dismissed, plaintiffs' petition also sought a restraining order and injunction to prohibit that action by the board. On the date the petition was filed, the trial court issued a temporary restraining order without notice or hearing and upon a nominal bond and enjoined the board of aldermen in Greenwood from terminating the police force and from contracting with any entity for police protection in the city.

We here observe that the grounds set out in plaintiffs' petition were insufficient to justify the temporary restraining order which the trial court issued. The dismissal of the police chief, who was one of the plaintiffs seeking the restraining order, had already been ordered by the board of

aldermen as had the release of the part-time officers. The authority of the board to appoint and replace the police chief and officers is beyond question. §§ 79.050 and 85.620. The sole purpose of a restraining order is to preserve the status quo and it is appropriate when it appears the defendant will commit some act during the litigation producing injury to the plaintiff. § 526.-050. The contemplated injury must be such that it cannot be redressed in an action for damages. The requisite pleading must allege facts showing the probability of irreparable damage coupled with the need for immediate action. *State v. Kelly*, 408 S.W.2d 383, 390 (Mo.App.1966).

▮ The directive of the temporary restraining order for retention of the Greenwood police force did not preserve the status quo, but operated to nullify the prior discharge of police personnel by the board of aldermen. Compliance with the order required that the board either reinstate the employees formerly serving or hire new officers. Whatever may have been the merits of plaintiffs' petition claims as to the proposed contract with Jackson County, judicial interference with the discharge, retention or replacement of Greenwood police officers was improvidently undertaken by the temporary restraining order. The decision by the board of aldermen in the matter of police personnel was within the authority of that body and should not have been summarily overturned by a restraining order issued ex parte.

▮ Plaintiffs' petition was also more generally insufficient to support the restraining order because it did not allege in any particular what damage, irreparable or otherwise, would be suffered by plaintiffs during pendency of the cause were defendants not enjoined from contracting with Jackson County for municipal law enforcement in Greenwood. The petition merely asserted that law enforcement under the proposed contract "would be ineffective and inadequate," that the substitution of a sheriff's patrol for the services of the Greenwood police department "threatens the safety and well-being of said residents and will result in irreparable harm" for which there would be no adequate compensation in damages. Such generalized contentions show no actual threat of damage to plaintiffs or their property and do not amount to a pleading of facts demonstrating the probability of irreparable harm necessary before a temporary restraining order issues.

When the cause came on for hearing pursuant to the notice provided in the temporary restraining order, plaintiffs' evidence then, and thereafter at the hearing on the petition for permanent injunction,[2] disclosed plaintiffs' case to be based on two contentions: First, that the best interests of the citizens of Greenwood would be served by having a Greenwood police force in preference to the special services of deputies assigned by the county sheriff and, Second, that Greenwood was without statutory and constitutional authority to arrange municipal police protection by contract with another governmental entity. It is critically significant that plaintiffs made no contention by pleading or proof that public funds of Greenwood were to be expended for an illegal purpose or that plaintiffs, in common with other taxpayers of Green-

---

**2.** Analysis of the case is partially confounded by the court's apparent assumption of authority to finally adjudicate the merits of the cause at the hearing on the temporary injunction. The judgment entered after that hearing, although headed "Restraining Order," bears the indicia of a permanent injunction and plaintiffs' evidence was directed toward this result rather than maintenance of the temporary order pending disposition on the merits. While a plaintiff may elect to forego a step in preliminary resolution of a claim for injunctive relief, the process normally includes three phases, a restraining order, a temporary injunction and a perma-

nent injunction. *Bayer v. Associated Underwriters, Inc.*, 402 S.W.2d 11 (Mo.App.1966). The parties here obviously did not regard the order entered after the first hearing as a final judgment, despite its content as such, but they proceeded to another hearing after which the judgment now appealed was entered. The first hearing was conducted in a different division of the circuit court from that where the final hearing was held. The order following the first hearing and the present judgment reached opposite results on substantially the same evidence.

wood, would be obliged to replenish depleted municipal resources because of improper expenditures. It is on this ground that plaintiffs' cause failed because plaintiffs lacked standing as aggrieved parties entitled to maintain the action for injunction.

 Although defendants in their answer affirmatively pleaded that the court lacked subject matter jurisdiction, the plaintiffs' standing to maintain the suit was not mentioned in the restraining order issued following the first hearing nor was that deficiency noted as a basis for decision in the judgment here appealed. In a memorandum accompanying that judgment, the trial court held, first, that a decision as to the method of providing police protection in Greenwood was a legislative and not a judicial question and, second, that the constitution and statutes of Missouri authorize contractual intergovernmental cooperation in performance of services. The standing of plaintiffs to pursue their claim is, of course, an issue which precedes an approach to the merits of the case and must logically be considered first. That ground, if supportive of the result reached by the trial court, is sufficient for affirmance because the judgment in a court-tried case is to be affirmed if it could properly have been reached on any reasonable theory. *Watkins v. Johnson*, 606 S.W.2d 493 (Mo.App.1980). We address the standing question on this basis and do so sua sponte because the subject of the case is the public interest of citizens in Greenwood.

 The right of a taxpayer to maintain an action for himself and others similarly situated is a privilege exercisable in a public capacity. The special interest requisite to maintain the action derives from a class specially damaged by the unlawful act. *Missourians for Separation of Church and State v. Robertson*, 592 S.W.2d 825, 839 (Mo.App.1979). Allegation and proof of illegal expenditure of public funds, or the prospect thereof, is therefore an essential element required to demonstrate damage to the class of taxpayers a plaintiff in a case such as this purports to represent. The

mere allegation by a citizen that an illegal act has been or is about to be committed by a public officer is not sufficient to permit maintenance of an injunction suit. *Moseley v. City of Mountain Grove*, 524 S.W.2d 444 (Mo.App.1975).

 Plaintiffs here made no petition allegation respecting disbursement of public funds and the evidence warrants no inference that the general tax burden would be increased as was indulged in *Castilo v. State Highway Commission*, 312 Mo. 244, 279 S.W. 673 (banc 1925). To the contrary, the proposed contract with Jackson County was structured for the purpose of reducing the city's expense for police protection to the general benefit of the city treasury. The plaintiffs' claim was no more than an expression of disagreement with the political decision by the aldermen to substitute a different method of providing law enforcement and a charge that an agreement not yet consummated was potentially in excess of municipal authority. The question of an unlawful expenditure of tax revenues was quite apparently not the gravamen of the complaint particularly where no contract had yet been made and the amount and date for expenditures were yet undefined.

A further and fatal impediment to plaintiffs' standing remains. The petition alleged that the five plaintiffs were "residents and taxpaying citizens of the City of Greenwood." Of the five, however, only Worlledge, the former police chief, testified. No evidence was introduced to establish that Worlledge or any of the other plaintiffs were Greenwood taxpayers, an allegation denied in defendants' answer. The burden was upon plaintiffs to prove this essential element of the case and this they failed to do.

While the foregoing constitutes a sufficient basis to affirm the judgment denying injunctive relief to plaintiffs, this appeal presents various contentions of error referable to the trial court's memorandum. These points in summary contend that aldermen in fourth-class cities are by statute obligated to participate directly in the selection of police personnel, that Jackson Coun-

ty is without authority to contract for special services by the sheriff and collect additional compensation and that law enforcement in a fourth-class city may be performed only by an appointed police chief or an elected marshal, neither of which position may be satisfied by a contract with another governmental entity.

The trial court adequately and concisely answered these contentions in its conclusions of law which we adopt without use of quotation marks.

Article VI, § 18(c) of the Missouri Constitution authorizes a charter county to enact legislation providing for cooperative agreements between units of local government in the following language:

> "The charter may provide for the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision, except school districts, in the part of the county outside incorporated cities; *and it may provide, or authorize its governing body to provide, the terms upon which the county may contract with any municipality or political subdivision in the county and perform any of the services and functions of any such municipality or political subdivision.*" (emphasis added)

Jackson County by its own charter has recognized governmental cooperation. Jackson County Charter, Article II, § 16.32. The sheriff of Jackson County is specifically authorized to perform "police duties in incorporated areas of the county under contract authorized or entered into by the legislature with the governing body of any such incorporated areas . . ." Charter Article VII, § 5.

In a charter county the charter establishes the authority of officers such as the sheriff and his duties are not limited by general statutes applicable to non-charter counties. He has the authority in Jackson County to provide police services in Greenwood if a proper contract is entered into by the parties.

Section 79.050 authorizes the board of aldermen to appoint a police chief if

authorized by the voters as was done in Greenwood. They exercised that authority by appointing a chief. They then terminated the appointment of the incumbent individual and have indicated that they intend to appoint the sheriff to the position pursuant to a contract which is to be executed. In the face of specific authority in both the state constitution and county charter, to contract with the sheriff for police services there does not appear any legal reason why the contract as proposed exceeds the authority of either contracting party.

The judgment is affirmed.

All concur.