KIMBERLY RITCHHART, APPELLEE, V. HAL DAUB, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF OMAHA, ET AL., APPELLANTS.

594 N.W. 2d 288

Filed April 29, 1999.   No. S-98-224.

Thomas O. Mumgaard, Assistant Omaha City Attorney, for appellants.

Thomas F. Dowd, of Dowd & Dowd, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

The appellants, Hal Daub, Thomas Graeve, and Mark Conrey, were, respectively, the mayor, the fire chief, and the communications chief for the city of Omaha (collectively the defendants). They appeal from a judgment of the district court purporting to void certain oral agreements that Daub had made with Graeve and Conrey. For the reasons discussed below, we conclude that the appellee, Kimberly Ritchhart, did not have standing to prosecute this action. Accordingly, the district court did not have jurisdiction to consider the issues presented, and we reverse the district court's judgment and remand the cause with directions to dismiss Ritchhart's amended petition.

## FACTUAL BACKGROUND

The Omaha home rule charter, art. III, § 3.11, provides that public safety functions for the city of Omaha shall be performed

by the fire department headed by the fire chief, the police department headed by the police chief, and the communications department headed by the communications chief. The communications chief is responsible for the operation of the city's 911 emergency dispatch service. Each of these department heads is part of the city's "classified service." Omaha home rule charter § 3.11. See, also, Omaha Mun. Code, ch. 23, art. III, §§ 23-92 and 23-93.

An employee in the classified service, if dismissed, has the right to appeal the dismissal within 10 days of receipt of the letter of dismissal. Omaha Mun. Code, ch. 23, art. III, § 23-296. Appeals are taken to the city of Omaha's personnel board, and in such an appeal, the city has the burden to prove, by a preponderance of the evidence, that the action was taken for just cause and in good faith. Omaha home rule charter, art. VI, § 6.04(3). Just cause may include, but is not limited to, substance abuse, conviction of a crime, abuse of a person in custody, offensive conduct or language, insubordination, incompetence, negligence, violation of regulations, willful violation of the city charter, bribery, failure to pay debts, or absence from duty. Omaha Mun. Code, ch. 23, art. III, § 23-291.

Daub became mayor of Omaha on January 9, 1995. On December 31, he appointed Graeve to be the fire chief, and on January 8, 1996, he appointed Conrey to be the communications chief. As part of the hiring process, Daub asked Graeve and Conrey whether they would, if discharged, be willing to waive their right to appeal to the personnel board. They both agreed.

Ritchhart filed suit in the district court against the defendants, alleging that she was a "resident, registered voter, and citizen of Omaha." In her operative amended petition, Ritchhart alleged that the agreements among the defendants violated her right, under the Omaha home rule charter and the Omaha Municipal Code, to have the public safety functions of the city of Omaha performed without political influence or control.

The defendants demurred, arguing that Ritchhart lacked legal capacity to bring the action. The district court found:

> In the present case, [Ritchhart] has alleged that she has a legal or equitable interest in the rights, benefits and protections granted to her by the Charter, as adopted and

amended by the voters of the City of Omaha. Police protection, fire service, and emergency communications are such essential services of government that any citizen should have the right to sue if these services are not being provided in compliance with applicable law. As such, the Court finds that [Ritchhart] has standing to bring this suit in equity to enjoin city officials from violating the letter and intent of the City Charter.

Based on this determination, the district court overruled the demurrer and set the case for trial.

At trial, Daub testified that his inquiry regarding waiver of the right to appeal was more of a "gentleman's agreement," as opposed to a legally enforceable obligation. Daub stated that his agreements with Graeve and Conrey were not conditions of employment and that Daub understood that the agreements would not have been enforceable or legally binding in any way. Daub also testified that when appointing a police chief, which had not occurred at the time of trial, he did not intend to require a binding agreement from his appointee regarding waiver of the right to appeal, nor was he even certain that he would discuss the issue with the appointee.

The testimony of Graeve and Conrey was generally consistent with that of Daub. Both Graeve and Conrey testified that although they intended to abide by the terms of the agreements, they both understood the agreements not to be legally binding upon them.

The district court, after trial, entered a permanent injunction against Daub. The court found, "regardless of how you label this agreement, that the Defendant Daub's actions constitute an overt effort to rewrite or to change the Charter and that such action would cause irreparable harm to the integrity of the classified positions involved." The court found that the agreements Daub had with Graeve and Conrey were null and void, that Daub should be permanently enjoined from enforcing his agreements with Graeve and Conrey, and that Daub should be enjoined from entering into any agreement with the prospective police chief, or any other prospective member of the classified service, whereby the individual's appeal rights under the

Omaha home rule charter were waived or modified. This appeal followed.

## ASSIGNMENTS OF ERROR

The defendants argue that the district court erred (1) in finding that Ritchhart had standing to sue, (2) in concluding that it had subject matter jurisdiction in the action, and (3) in finding that Ritchhart's amended petition stated facts sufficient to constitute a cause of action.

## STANDARD OF REVIEW

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from those of a trial court. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998).

## ANALYSIS

The first issue we must address is whether Ritchhart had standing to bring this action. Because the requirement of standing is fundamental to a court's exercising jurisdiction, a litigant or court before which a case is pending can raise the question of standing at any time during the proceeding. *Id.*

In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.* Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Cotton v. Steele*, 255 Neb. 892, 587 N.W.2d 693 (1999); *Hawkes v. Lewis, supra.* As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Id.* Under the doctrine of standing, a court may decline to determine the merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. *Cotton v. Steele, supra.*

In the present case, Ritchhart argues that she, as an Omaha resident, "is entitled to the rights, benefits, and protections of the Omaha City Charter which include having the public safety functions performed by individuals who are in the classified service with the protections thereof which insures the discharge of their duties free and unobstructed by political influence." Brief for appellee at 3-4. Ritchhart, however, has not alleged or identified any interest she has in the outcome of this litigation which is not shared equally by all the residents of Omaha.

We have long held that in order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985). Accord *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 386 N.W.2d 433 (1986). We have further stated: " 'A person seeking to restrain the act of a municipal body must show some special injury peculiar to himself aside from and independent of the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.' " *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 899, 327 N.W.2d 595, 602 (1982) (quoting *West Fort Residents Assn. v. Housing Auth. of City of Omaha*, 205 Neb. 397, 288 N.W.2d 27 (1980)).

In the case at bar, neither Ritchhart's pleadings nor her brief identify any special injury independent and aside from that shared by the general public. Ritchhart did not plead an illegal expenditure of public funds or an increase in the burden of taxation, and concedes on appeal that "[t]his case is not a taxpayer's action, and has never been alleged or argued as such." Brief for appellee at 5. Thus, according to the well-established principles of standing set forth by this court, Ritchhart would not have standing to maintain this action.

In overruling the defendants' demurrer on the issue of standing, however, the district court relied on the theory that since police, fire, and emergency communications are "essential services," any citizen should have standing to raise a challenge if those services are allegedly not being provided in accord with legal requirements. The district court erred in this determination.

In a Missouri case presenting similar issues, the court of appeals determined that citizens of a city lacked standing to bring a challenge to the city's decision to contract for municipal law enforcement services. *Worlledge v. City of Greenwood*, 627 S.W.2d 328 (Mo. App. 1982). In that case, the city had dismissed the municipal police force and contracted with the county government for municipal law enforcement in the city. *Id.* A group of residents sued, alleging that the contract "'threatens the safety and well-being of said residents and will result in irreparable harm.'" *Id.* at 330. The plaintiffs argued that the best interests of the city would be served by having a municipal police force instead of the special services of assigned county sheriff's deputies and that the city was without legal authority to contract for the provision of municipal police protection. *Id.*

The appellate court noted that the plaintiffs had pled no more than a generalized injury, had not proved that public funds of the city were to be illegally spent, and had not shown that they would be subjected to an increased tax burden as a result of the contract. *Id.* The court determined that the "plaintiffs' cause failed because plaintiffs lacked standing as aggrieved parties entitled to maintain the action for injunction." *Id.* at 331.

In the present case, Ritchhart has similarly alleged a general interest in the benefits of municipal law enforcement and emergency services. This supposed injury, however, is common to all the citizens of Omaha and is insufficient to confer standing upon Ritchhart to sue.

We are aware of a trend, under certain circumstances, to expand the traditional standing requirements. See, e.g., *New Mexico Right to Choose/NARAL v. Johnson*, 126 N.M. 788, 975 P.2d 841 (1998), *cert. denied* ___ U.S. ___, 119 S. Ct. 1256, ___ L. Ed. 2d ___ (1999); *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988); *Akau v. Olohana Corp.*, 65 Haw. 383, 652 P.2d 1130 (1982); *Alaska Public Defender Agcy. v. Superior Court*, 584 P.2d 1106 (Alaska 1978); *Blondheim v. State*, 84 Wash. 2d 874, 529 P.2d 1096 (1975); *Channel 10 v. Independent School Dist. No. 709*, 298 Minn. 306, 215 N.W.2d 814 (1974).

Even if we were to find this authority to be persuasive, it is evident that the concerns expressed by those courts are not present in the instant case. One of the primary considerations for the courts that have liberalized standing requirements has been whether, if standing were denied, there would be any party that would be able to assert the claim and represent the public interest. See *Sprague v. Casey, supra.* Courts have thus imposed a minimal inquiry of whether the interests of the parties are actually adverse, and those courts have been willing to find standing supported by such an inquiry. See, *Alaska Public Defender Agcy. v. Superior Court, supra*; *Channel 10 v. Independent School Dist. No. 709, supra.*

It has been stated, however, that " '[c]onsideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or *the existence of other persons better situated to assert the claim.*' " (Emphasis in original.) *Application of Biester*, 487 Pa. 438, 446, 409 A.2d 848, 852 (1979) (quoting *Government of Guam ex rel. Camacho v. Bird*, 398 F.2d 314 (9th Cir. 1968)). The threshold question, then, when a party attempts to base standing on an injury common to the general public, has been whether or not there exists another party whose interests are more at issue in the action, and who is thus more appropriately entitled to present the claim. Compare *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998) (holding that standing cannot be based on asserted rights of third party).

The concern underlying this permutation of the standing doctrine is that in certain cases, judicial review would not otherwise occur. In the present case, however, it is clear that to the extent that a cause of action might exist, the parties capable of asserting it would be the employees of the classified service. It is questionable, under these facts, whether a cause of action would ever accrue, given the doubtful validity of these agreements and the general understanding of the parties that the agreements are not legally enforceable. Nonetheless, if Daub were to attempt legal enforcement of an employee's waiver of the right to appeal from a dismissal, then that employee would clearly have standing to challenge the legal validity of the waiver.

The claim presented by Ritchhart in the instant case would be more appropriately advanced by the employees who have theoretically waived their appellate rights. Ritchhart cannot be afforded standing on the theory that the interests of the public would otherwise go unprotected.

We are also mindful that adopting an "essential services" exception to our standing rule, under these circumstances, would detrimentally alter the proper role of the courts in resolving these disputes. Police and fire protection and emergency services are not only among the most essential services provided by a municipality, but those services are also among the most contentious. The adoption of an "essential services" exception would potentially open the city to litigation over a multitude of disputes regarding the city's public safety policy. The general public certainly has a right to influence the city's policies regarding public safety, but the established mechanism for doing so is through our representative form of government and ultimately through the ballot box, not through the courts. Given the preeminence of public safety in the political life of the average municipality, such an exception, if adopted, would result in the judicial system's interjection into many political issues confronting the community, regardless of whether or not the issues are amenable to judicial review. Thus, we choose not to adopt an "essential services" exception to our well-established requirements for standing.

## CONCLUSION

Because we conclude that Ritchhart does not have standing to maintain this action, we reverse the judgment of the district court and remand this matter with directions to dismiss Ritchhart's amended petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.