CONSECO FINANCE SERVICING CORPORATION, f/k/a Green Tree Finance Servicing Corp., et al., Respondents,

v.

MISSOURI DEPARTMENT OF REVENUE, Appellant.

No. SC 84347.

Supreme Court of Missouri, En Banc.

March 4, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charles W. Hatfield, Asst. Atty. Gen., Jeffrey Harris, Asst. Atty. Gen., Douglas E. Nelson, Asst. Atty. Gen., Jefferson City, for Appellee.

David G. Wasinger, Randall T. Oettle, Rebecca A. Nickelson, St. Louis, for Respondents.

James P. Gamble, St. Louis, Amicus Curiae.

LAURA DENVIR STITH, Judge.

The Missouri Department of Revenue appeals the trial court's judgment permanently enjoining it from issuing certificates of title to owners of manufactured home parks for manufactured homes that were abandoned at their parks. It had previously issued such titles to mobile home park owners pursuant to sections 700.525 through 700.541, governing abandoned manufactured home title disposition (AMHTD).[1] The court held that AMHTD unconstitutionally deprives secured parties of their security interests and owners of their property rights in financed homes without adequate notice or other process and that the provisions of the statute are unconstitutionally vague.

This Court finds that the trial court erred in reaching the serious constitutional issues raised as to the notice and forfeiture procedures of AMHTD as they relate to owners of manufactured homes. It erroneously entered judgment on these issues without permitting the department to file an answer or show cause why an injunction should not issue as to the implementation of AMHTD as to homeowners and without permitting the department to put on evidence or conduct discovery on those issues.

This Court also finds that it is premature at this juncture to determine the validity of the provisions of AMHTD relating to secured parties. These provisions presume a valid transfer of title and ownership from the former owner to the mobile home park owner. They are incomplete and cannot be executed in accordance with legislative intent in the absence of the provisions regarding homeowners, and they are so inseparably connected with the homeowner provisions that it cannot be presumed that the legislature would have adopted them in the absence of the provisions regarding homeowners. Moreover, Conseco has made numerous factual allegations concerning its security interests in certain manufactured homes, concerning the department's handling of the notice of and transfer of title in those cases, and concerning the department's practices in this regard generally, that have been de-

1. All statutory references are to RSMo 2000 unless otherwise indicated.

nied by the department, thereby raising issues of Conseco's standing to seek the relief it requests here. The trial court should have addressed these issues before resolving the constitutional issues raised as to the effect of the statute on secured parties. Reversed and remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

According to the allegations of the petition, John Wren Jr. and Shannon Wren bought a manufactured home. They financed their purchase through Conseco Finance Servicing Corp. (formerly known as Green Tree Financial Servicing Corp.), which retained a security interest in the home. The petition further alleges that the Wrens placed their manufactured home in a mobile home park owned by Lakehurst Investments, a real estate investment company, and lived in the home. In October 1999, Lakehurst alleged that the Wrens had abandoned their home and applied to the department of revenue for issuance of a new title to the manufactured home in its name under AMHTD. In May 2000, the petition alleges, the department sent the Wrens and Conseco notice of Lakehurst's application for title due to abandonment. The notice stated that the home was abandoned and that the department would issue title to Lakehurst unless the Wrens or Conseco redeemed the home by paying all rents due to Lakehurst within 30 days "to protect their interest." The home was not redeemed, and the department issued Lakehurst a certificate of title. That certificate did not reflect Conseco's security interest.

Conseco filed suit against the department in August of 2001. Count I asked for a declaration that AMHTD was unconstitutional as to secured parties and homeowners. Count II raised various issues about the department's application and implementation of AMHTD and asked for a declaration that AMHTD, if constitutional, does not affect the rights of secured parties. The trial court granted Conseco a temporary restraining order enjoining the department from issuing titles under AMHTD.

After the department filed an answer to Conseco's first amended petition, the trial court granted Conseco leave to file a second amended petition adding the Wrens as additional party plaintiffs. On that same day, without giving the department an opportunity to answer the Wrens' allegations as to the invalidity of AMHTD as to homeowners, the court granted a permanent injunction finding that various provisions of AMHTD were unconstitutional as to both the Wrens and Conseco and prohibiting the department from issuing titles under AMHTD. The department appeals.

## II. STANDARD OF REVIEW

The court's judgment in a suit in equity will be affirmed unless there is no substantial evidence to support it, unless it was against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Nothaus v. City of Salem*, 585 S.W.2d 244, 245 (Mo.App. S.D.1979). Because this case involves statutory interpretation, which is a question of law, this Court's review is *de novo*. *Ochoa v. Ochoa*, 71 S.W.3d 593, 595 (Mo. banc 2002). Statutes are presumed constitutional. *In re Marriage of Kohring*, 999 S.W.2d 228, 231 (Mo. banc 1999). A statute will not be invalidated "unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." *Id.*

## II. CONSTITUTIONALITY OF AMHTD

When enacted, AMHTD was designed to address the problems that arise when a person abandons a manufactured home in a mobile home park without the landlord's consent.[2] Under AMHTD, when a manufactured home is abandoned in a mobile home park, the owner of the park, referred to as a "landlord" by AMHTD, can apply to the department of revenue for a certificate of title by submitting a report to the department, the required contents of which are outlined in section 700.527. The department then sends notice to the owner of the manufactured home and to any holder of a security interest in the home informing them of the home's alleged status as abandoned and of the right of the landlord to seek title to the home under AMHTD if the home remains abandoned. *Sec.* 700.531. The notice informs them that if the owner or the holder of any security interest wishes to claim title to the home under AMHTD, the owner or secured party must prove either ownership or that a valid security interest exists and pay "all reasonable rents due and owing to the landlord." *Sec.* 700.533.

### A. Constitutionality as to Homeowners.

■ Conseco and the Wrens argued in the trial court that section 700.525 permits a homeowner to be found to have abandoned the home if the homeowner is even a small amount behind in rent, so long as the utilities have been turned off or the landlord claims that there are other "indications of abandonment;"[3] that the statute allows deprivation without a pre-deprivation hearing to contest what rents are owing or whether indications of abandonment exist; that the statute forfeits all of the owner's equity in the home merely because the owner owes a few hundred dollars or less in rent, unless the owner pays all rents within 30 days; and that these provisions result in deprivation of the owner's property rights in the manufactured home and in the proceeds of the home without due process. After considering the above arguments, the trial court declared AMHTD unconstitutional because it deprives homeowners of their property without adequate notice or opportunity to be heard and because it is unconstitutionally vague.

This Court agrees that serious constitutional issues would be raised were this Court to construe AMHTD to permit a landlord to retain the proceeds of sale of a manufactured home, over and above the amounts due in rents and related expenses, and should it permit a finding of abandonment without constitutionally adequate notice and opportunity to be heard.[4]

---

2. Amicus, the Jefferson County Manufactured Housing Association, contends that abandoned manufactured homes degrade a mobile home park community because they are subject to burglary and vandalism and that abandoned manufactured homes can potentially become an attractive nuisance for area children.

3. Section 700.525 provides:

    As used in sections 700.525 to 700.541, the following terms mean:
    (1) "Abandoned", a physical absence from the property, and either:

    (a) Failure by a renter of real property to pay any required rent for fifteen consecutive days, along with the discontinuation of utility service to the rented property for such period; or
    (b) Indication of or notice of abandonment of real property rented from a landlord;
    (2) "Manufactured home", a factory-built structure as defined in subdivision (5) or (7) of section 700.010.

4. Ironically, the department sent the Wrens' notice to the address at which the manufactured home was located, a location that it had

It is premature for this Court to finally resolve these issues, however, for, while the Wrens were added as parties in the second amended petition, the ruling permitting that filing occurred on the same day the court issued its permanent injunction. No order was first issued allowing the department to show cause why a permanent injunction should not issue, nor was it otherwise given the opportunity to answer, conduct discovery or present evidence on the issues raised by the petition.

■ The department alleges that numerous issues need to be explored, such as whether the Wrens indeed owned the home in question, whether they abandoned it, whether their home was forfeited under AMHTD, what rents were owing, what notice the Wrens received, if any, and so forth. A defendant is entitled to file an answer before the court rules in favor of the plaintiff on the allegations of the petition, and a permanent injunction should not issue until the pleadings have been joined and the evidence necessary to the court's determination has been developed. *See, e.g.,* Rule 55.01; *State ex rel. Woytus v. Ryan,* 776 S.W.2d 389, 391 (Mo. banc 1989) (purpose of discovery is to provide access to information needed to develop issues framed by pleadings); *Simms v. Ford Motor Credit Co.,* 605 S.W.2d 212, 214 (Mo.App. E.D.1980) (pleadings must be made up and issues developed); *Frimel v. Humphrey,* 555 S.W.2d 350, 352 (Mo. App.1977) (same).

■ While the department did have the opportunity to respond to the allegations in Conseco's petition as to the alleged unconstitutionality of AMHTD as to home-

owners, Conseco is not the owner of the manufactured home and has not offered arguments showing it has standing to raise these issues on behalf of the Wrens or other owners, or in its own right because the alleged unconstitutionality of the provisions as to homeowners affected its rights as a secured party, or because it has an ownership interest in one or more homes it has repossessed which might be directly affected by the homeowner provisions. Standing is antecedent to the right to relief. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227, n. 6 (Mo. banc 1982). Persons seeking relief have no right to do so in the absence of standing. *State ex rel. Twenty–Second Judicial Circuit v. Jones,* 823 S.W.2d 471, 475 (Mo. banc 1992).

For these reasons, this Court remands this cause to the trial court with directions that it permit the department an opportunity to answer and undertake discovery as to the allegations of unconstitutionality as to homeowners.

### *B. Constitutionality as to Secured Parties.*

■ Conseco also argues that AMHTD is unconstitutional as applied to secured parties because it deprives the secured party of its security interest in the manufactured home without adequate notice, requires the secured party to pay rent owed by the homeowner merely to retain what is already a perfected security interest, gives the secured party insufficient time in which to respond to the notice, and impairs its security interest by leaving the debt in the name of the debtor while transferring ownership of the home to the landlord, thereby depriving it of the collateral neces-

---

just been told was abandoned. Nothing in the record suggests that the department attempted another form of notice better calculated to give actual notice to the homeowner. Additional questions are raised as to the adequacy of the timing and content of the pre-

deprivation notice and the lack of, or lack of notice of, judicial review of the department's determination to find the home abandoned and issue a new title to the landlord. *See sec.* 621.050.

sary to protect its security interest or, at best, leaving it with a security interest that is not reflected on the title issued by the department of revenue.

The attorney general, on behalf of the department of revenue, disagrees. The attorney general suggests that the trial court erroneously based its holding that AMHTD deprives secured parties of their security interests without adequate notice or other process on what may be the department of revenue's flawed interpretation of AMHTD rather than on the provisions of AMHTD itself. The disagreement of the parties on this issue results in part from their differing interpretations of whether and how the provisions set out in section 700.527.1 can be harmonized with those of section 700.525. Section 700.527.1 provides:

> If a person abandons a manufactured home on any real property owned by another who is renting such real property to the owner of the manufactured home, and such abandonment is without the consent of the owner of the real property, the owner of the real property may seek possession of and title to the manufactured home in accordance with the provisions of sections 700.525 to 700.541 *subject to the interest of any party with a security interest in the manufactured home.*

*Sec.* 700.527.1 (emphasis provided). Section 700.530 further provides:

> The provisions of sections 700.525 to 700.539 shall not affect the right of a secured party to take possession of, and title to, a manufactured home pursuant to section 400.9–503, RSMo, section 700.386 or otherwise as allowed by contract or law.

*Sec.* 700.530.

Conseco argues that, although these sections appear to protect the secured party's interest in the home, that protection is rendered ambiguous or non-existent by section 700.535, which Conseco suggests extinguishes the secured party's interest in the home unless the secured party files a response within 30 days of receiving notice that the landlord has requested title be issued in its name. Section 700.535 states:

> 700.535. Owner of manufactured home may voluntarily relinquish claim or relinquish by failure to respond to notice—right to reclaim, requirement.—
>
> If the manufactured home is titled in Missouri, the valid owner of the manufactured home or the holder of a valid security interest therein *may voluntarily relinquish any claim to the manufactured home* by affirmatively declaring such relinquishment or by failing to respond to the notice required by section 700.531 within thirty days of the mailing or delivery of such notice by the director of revenue.

*Sec.* 700.535 (emphasis provided).

Certainly, serious constitutional issues would be raised were AMHTD construed to destroy a secured party's ability to retain a perfected security interest without adequate notice and other necessary process. But, for at least two reasons, this Court need not reach the issue whether this language must be given the broad interpretation suggested by Conseco, or whether it can instead be read in the context of the entire statutory scheme, including sections 700.527.1 and 700.530, to protect the perfected security interest of a secured party. *See Silcox v. Silcox,* 6 S.W.3d 899, 903 (Mo. banc 1999) (statute will be construed constitutionally if possible); *See also Hagan v. Dir. of Revenue,* 968 S.W.2d 704, 706 (Mo. banc 1998).

First, just as the record at this juncture does not show that the Wrens or Conseco have standing to raise the constitutionality of the homeowner provisions of the rele-

vant statutes, it does not show that Conseco has standing to raise these issues as to the department's application of these provisions to secured parties, for the department has denied Conseco's allegations that it has a security interest in the listed homes or that it has received inadequate notice and opportunity to be heard or that its security interest is not adequately reflected in the titles issued by the department.

The trial court never reached the issues regarding the propriety of the department's implementation of the statute, instead proceeding directly to the constitutional claims of Conseco and finding the statute unconstitutionally deprives Conseco of notice and an opportunity to be heard and is unconstitutionally vague. The court should have addressed the standing and other preliminary factual issues on which Conseco's constitutional and statutory interpretation claims are based before reaching these constitutional issues. *See Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 53–54 (Mo. banc 1999); *State ex rel. Dir. of Revenue, State of Mo. v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996); *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227 (Mo. banc 1982).

Second, any determination by this Court that the portions of AMHTD dealing with secured parties such as Conseco are constitutional when considered alone necessarily would be rendered moot if the statute is unconstitutional as applied to homeowners, for the provisions of these statutes governing the rights of secured parties and those governing the rights of homeowners are inextricably intertwined. Section 1.140 provides that, where some of the provisions of a statute are struck down, the remaining provisions will be found to be severable:

> unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

*Sec.* 1.140. *See Jefferson Sav. and Loan Ass'n v. Goldberg*, 626 S.W.2d 640, 644 (Mo. banc 1982) (where portion of statute struck down, remainder cannot stand where it is too intertwined with stricken provision); *Ryan v. Kirkpatrick*, 669 S.W.2d 215, 219 (Mo. banc 1984) (applying section 1.140 to sever remaining portions of campaign finance act from provisions found to be unconstitutional).

The provisions of AMHTD governing homeowners and secured parties are partially set out in the same and partially set out in different statutes, but the provisions of AMHTD concerning secured parties are so essentially and inseparably connected with, and so dependent on, the provisions regarding homeowners that it cannot be presumed the legislature would have enacted the former without the latter. And, the secured party provisions, standing alone, would be incomplete and incapable of being executed in accordance with legislative intent, in that, if the homeowner provisions are struck down, then there will be no transfer of title, and so the provisions of AMHTD as to secured parties will never come into play. For both of these reasons, the provisions as to secured parties cannot be given effect if those as to homeowners are struck down on remand.

For the reasons set out above, this Court remands this case with directions to permit the director of revenue an opportunity to respond to and conduct discovery as to the allegations of the second amended petition made by the Wrens and for

further proceedings in accordance with this opinion.

WHITE, WOLFF, BENTON, and PRICE, JJ., concur.

LIMBAUGH, C.J., concurs in separate opinion filed; TEITELMAN, J. concurs in opinion of LIMBAUGH, C.J.

STEPHEN N. LIMBAUGH, JR., Chief Justice, concurring.

I agree that the judgment must be reversed for lack of standing. I write separately, however, because the majority addresses other issues, particularly severability under section 1.140, RSMo, that are unnecessary for resolution at this point in the proceedings and that were not raised, briefed, or argued by the parties. Standing on the other hand, is jurisdictional in nature and may be addressed *sua sponte. See State ex rel. Mathewson v. Bd. of Election Comm'rs of St. Louis County,* 841 S.W.2d 633, 634 (Mo. banc 1992) ("Standing is akin to jurisdiction over the subject matter, in limine. As such, the question of a party's standing can be raised at any time, even *sua sponte* by this Court.").

When considering standing issues, courts must rely on uncontested facts. *See Hinton v. City of St. Joseph,* 889 S.W.2d 854, 857 (Mo.App.1994) ("In determining the issues related to standing, we will consider not only plaintiffs' petition but also the additional non-contested facts which all parties accepted as true at the time of argument on the motion to dismiss. Thus, we will engage in a summary judgment mode of analysis, seeking to determine whether the issue of standing is resolved as a matter of law *on the basis of the undisputed facts.*") (emphasis added); *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood,* 32 S.W.3d 612, 614 (Mo.App.2000); *Switzer v. Hart,* 957 S.W.2d 512, 514 (Mo.App.1997); *Paul Londe, Inc. v. Carlie,* 743 S.W.2d 564, 567 (Mo.App.1987) ("[Plaintiff] was entitled to bring suit to enforce the note only if it was entitled on undisputed facts, to standing as a holder of the note.").

*Worlledge v. City of Greenwood,* 627 S.W.2d 328 (Mo.App.1982) demonstrates this proposition more fully, and is particularly instructive as it involved a situation similar to that presented in the instant case. In *Worlledge,* the trial court issued a temporary injunction but denied the plaintiffs' request for a permanent injunction. Although lack of standing was not the basis of the trial judge's decision, the appellate court, *sua sponte,* questioned the plaintiffs' right to challenge defendant's expenditure of tax dollars and ultimately concluded as follows:

A further and fatal impediment to plaintiffs' standing remains. The petition alleged that the five plaintiffs were "residents and taxpaying citizens of the City of Greenwood." Of the five, however, only Worlledge, the former police chief, testified. No evidence was introduced to establish that Worlledge or any of the other plaintiffs were Greenwood taxpayers, *an allegation denied in defendants' answer.* The *burden was upon plaintiffs to prove this essential element of the case* and this they failed to do.

*Id.* at 331 (emphasis added). Under *Worlledge* and the other cases cited, the mere fact that plaintiffs had made the requisite allegations, where these allegations were denied by the defendants in their answer, was not sufficient to support a finding of standing.

The case at hand is no different. Although plaintiffs have alleged facts that would support standing, defendants have denied each and every allegation in plaintiffs' petition. Until those preliminary

facts have been established, the trial court has no jurisdiction to enter a judgment.