**ST. LOUIS POLICE OFFICERS' ASSOCIATION, et al.,**
**Appellants,**

**v.**

**BOARD OF POLICE COMMISSION- ERS OF the CITY OF ST. LOUIS, et al., Respondents.**

**No. SC 88954.**

Supreme Court of Missouri, En Banc.

June 30, 2008.

Rehearing Denied Aug. 26, 2008.

---

Elkin L. Kistner, Adam R. Lorenz, James J. Wilson, St. Louis, MO, for appellants.

Patricia Hageman, City Counselor, Nancy R. Kister, Deputy City Counselor, Thomas R. McDonnell, Associate City Counselor, Office of the St. Louis City Counselor, St. Louis, MO, for respondents.

RICHARD B. TEITELMAN, Judge.

The St. Louis Police Officers' Association, Gary Phelps, and William Gooden (collectively "Association") appeal from the judgment of the trial court denying their petition for an injunction to prevent the Board of Police Commissioners of the City of St. Louis ("Board") from reducing the free health insurance benefits of retired police officers that is mandated by statute. The judgment is reversed, and the case is remanded.

## I.

Prior to 2006, retired police officers who served in the City of St. Louis Police Department received health coverage without having to pay an insurance premium. In 2006, the Board altered the health insurance plan for retired officers. The new health insurance plan included a basic plan available without payment of a premium and a buy-up plan, which has a $251 monthly premium. The basic plan differed from the former plan by raising annual deductibles from $500 to $2,250, increasing co-payments for office and hospital visits, increasing the coinsurance maximum, and decreasing the coinsurance coverage percentage. The buy-up plan offers retirees the same more extensive coverage as provided to active police officers.[1] The difference between the buy-up plan and the plan

---

1. The following are some of the provisions of basic plan and the buy-up plan:

Basic Plan

| | | |
|---|---|---|
| Annual Individual Deductible: | $ | 2,250 |
| Individual Coinsurance Maximum: | $ | 5,200 |
| Office Visit Co–Pay: | $ | 30 |
| Emergency Room Co-Pay: | $ | 50 |
| Medical Program Maximum: | | Unlimited |
| 3-Tier Co-Pay Prescription Drugs: | | $ 10/$35/$75 |

Buy-up Plan

| | | |
|---|---|---|
| Annual Individual Deductible: | $ | 0 |
| Individual Coinsurance Maximum: | $ | 0 |
| Office Visit Co-Pay: | $ | 15 |
| Emergency Room Co-Pay: | $ | 50 |
| Medical Program Maximum: | | Unlimited |
| 3-Tier Co–Pay Prescription Drugs: | $ | 8/$25/$45 |

for active officers is that active police officers do not pay premiums.

The Association filed a petition seeking to enjoin the Board from implementing the new health insurance plan. The Association alleged that the new insurance plan was inconsistent with section 84.160.8(3), RSMo Supp.2006, which provides that the Board "shall provide" health insurance to police retirees.[2] The Association also alleged that implementation of the Board's new free insurance plan would unreasonably, arbitrarily, and capriciously deprive police retirees of a vested property right without due process of law in violation of the United States Constitution and the Missouri Constitution and their civil rights under 42 U.S.C. section 1983.

The circuit court issued a preliminary injunction in favor of the Association. At trial, there was expert testimony indicating that the insurance provided to retirees without the payment of a premium offered less coverage at a higher cost than any other group health insurance plan with which the experts were familiar. Following a bench trial, the court entered a judgment denying the Association's request for a permanent injunction.

This Court concludes that the new policy does not meet the requirements of section 84.160.8(3). Consequently, the judgment is reversed, and the case is remanded so that the trial court may grant the requested relief.

## II.

■ An action for an injunction is an equitable action. *Supermarket Merchandising & Supply, Inc. v. Marschuetz,* 196 S.W.3d 581, 585 (Mo.App.2006). The trial court's judgment in a suit seeking equitable relief will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Conseco Finance Servicing Corp. v. Missouri Dept. of Revenue,* 98 S.W.3d 540, 542 (Mo. banc 2003).

Section 84.160.8(3) provides that "the board of police commissioners shall provide health, medical, and life insurance coverage for retired officers and employees of the police department." The issue is whether the basic plan and the buy-up plans offered by the Board violate the requirement that the board "shall provide" health insurance coverage for retired officers.

■ The primary rule of statutory construction is to "ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *Nelson v. Crane,* 187 S.W.3d 868, 869–870 (Mo. banc 2006). Related statutes are relevant in considering the meaning of the statute at issue. *Lane v. Lensmeyer,* 158 S.W.3d 218, 226 (Mo. banc 2005). Statutes are interpreted to avoid unreasonable or absurd results. *Reichert v. Board of Educ. of City of St. Louis,* 217 S.W.3d 301, 305 (Mo. banc 2007).

■ The legislature provides no guidance as to what minimal extent of coverage will satisfy the requirement that the Board "shall provide" insurance. Generally the use of the word "shall" connotes a mandatory duty. *Bauer v. Transitional School District of City of St. Louis,* 111 S.W.3d 405, 408 (Mo. banc 2003). The word "provide" means "to supply or make available." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986).[3] This language means that

---

**2.** Section 84.160 has been amended several times since 2001 but the language at issue has not changed since 2000. All further statutory citations, unless noted otherwise, are to RSMo Supp.2006.

**3.** The word "provide" is also defined as "to

the Board is under an affirmative obligation to supply health insurance coverage to retirees but does not resolve the issue of the minimal extent of that coverage.[4]

In determining the minimal extent of coverage required by section 84.160.8(3), related statutes are relevant to further clarify the meaning of a statute. See *State v. Withrow,* 8 S.W.3d 75, 80 (Mo. banc 1999). The statute most closely related to section 84.160.8(3) is section 84.160.8(1), which states that the Board "shall provide or contract for life insurance coverage and for insurance benefits providing health, medical and disability coverage for officers and employees of the department." The Board fulfills its statutory obligations under section 84.160.8(1) by providing to active duty officers essentially the same coverage offered in the buy-up plan but without the payment of a monthly premium.

Although section 84.160.8(3) imposes upon the Board nearly the same requirement with respect to retirees, the Board now requires retirees to pay a substantial monthly premium to obtain the same benefit provided to active duty officers without the payment of a premium. The Board does so despite the fact that the retired officers invested their entire career in the police department in consideration for a promise of healthcare in retirement, only to have the Board change course after the officers retired. The promise of healthcare in retirement is a critical benefit given the enhanced risk of injury and disability inherent in policing. The difference in insurance benefits offered to active officers and retirees is not consistent with the nearly identical statutory language governing the Board's treatment of its active officers and retirees. The Board is statutorily obligated to "provide" health insurance benefits to both its active officers and retirees. In order to avoid unreasonable discrepancies in insurance coverage provided to active duty officers under section 84.160.8(1) and to retirees under section 84.160.8(3), the Board must provide its retirees with substantially the same level of reasonable benefits provided to active duty officers without payment of a premium.

The judgment denying the petition for injunctive relief is reversed,[5] and the case is remanded.

PRICE and WOLFF, JJ., concur.

BRECKENRIDGE, J., concurs in part and dissents in part in separate opinion filed.

STITH, C.J., and RUSSELL, J. concur in opinion of BRECKENRIDGE, J.

LIMBAUGH, J., dissents in separate opinion filed.

PATRICIA BRECKENRIDGE, Judge, concurring in part, dissenting in part.

I concur in section I of the principal opinion, but dissent from section II.

---

supply what is needed for sustenance or support." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1966).

4. This conclusion is further supported by the fact that section 84.160.8(3) provides that the Board "shall provide" insurance coverage for retired officers and, in the very next sentence, states that with respect to spouse and dependents, insurance coverage "shall be made available for purchase...." The phrase "shall provide" is substantially different from the phrase "shall be made available for purchase" and implies that the Board must provide to its retirees insurance coverage without the necessity of paying a premium. Although the basic plan is available without the payment of a premium, the fact remains that the coverage available under the basic plan is substantially less than that under the coverage previously offered to the retirees.

5. The result in this case eliminates the need to address the Association's constitutional arguments.

This case requires the Court to determine whether the Board of Police Commissioners (Board) has provided health insurance coverage to retired St. Louis police officers as required by section 84.160.8(3), RSMo Supp.2006.[1] I agree with the principal opinion and Judge Limbaugh's dissent that the statute requires the Board to provide the police department's retirees a health insurance plan without charge. I also agree with the principal opinion's finding in section I that the actual health insurance plan provided by the Board is insufficient to satisfy the intent of the legislature in enacting section 84.160.8(3).[2] But I dissent from section II because I disagree as to the level of coverage that must be provided. Contrary to the holding of the principal opinion in section II, the language of the statute does not require that retired officers receive the same level of coverage as active officers. Nevertheless, the statute requires health insurance coverage greater than that provided by the Board's plan. Accordingly, I would reverse the judgment of the circuit court and remand.

## Discussion

Section 84.160.8(3) states that the Board "[s]hall provide health, medical, and life insurance coverage for retired officers and employees of the police department." In determining the obligation imposed on the Board by this statute, this Court applies the primary rule of statutory construction that the intent of the legislature is ascertained "from the language used" in the statute by giving the words of the statute "their plain and ordinary meaning." *Huber v. Wells Fargo Home Mortg., Inc.*, 248 S.W.3d 611, 614 (Mo. banc 2008).

While the language of sections 84.160.8(3) and 84.160.8(1)[3] is indeed similar, as noted by the principal opinion in section II, the two subsections merely state that the Board must provide health coverage to both active duty officers and retired officers. There is nothing in the language of the statute to suggest that the level of coverage provided to each group must be the same or even substantially similar. To so hold requires the addition of words that do not exist in the statute. This Court "cannot supply that which the legislature has, either deliberately, or inadvertently, or through lack of foresight, omitted from the controlling statutes." *State ex rel. Mercantile Nat. Bank at Dallas v. Rooney*, 402 S.W.2d 354, 362 (Mo. banc 1966). The Court "must be guided by what the legislature said, not by what the Court thinks it meant to say." *Metro Auto Auction v. Dir. of Revenue*, 707 S.W.2d 397, 401 (Mo. banc 1986).

Had the legislature intended for retirees to receive the same level of benefits as active duty officers, it was capable of writing such a statute. In fact, the legislature did so with respect to health insurance coverage for school district retirees, requiring that they have the option "to receive benefits at the same rate" as active employees.[4] Section 169.590, RSMo Supp.

---

1. All statutory references are to RSMo Supp. 2006, unless otherwise noted.

2. The Board offers two health insurance options to retired officers and employees: the "basic plan," which is provided for free, and the "buy-up" plan, which is available for a $251 per month premium. It is the basic plan that is at issue here. For a listing of some of the provisions of the two plans, see the principal opinion at note 1.

3. The Board "[s]hall provide or contract for ... insurance benefits providing health ... coverage for officers and employees of the department."

4. Section 169.590 provides, in part:
   1. Any insurance contract or plan ... which provides group health insurance or benefits for employees who are members of any retirement system established pursuant to this chapter shall contain provisions that permit:

2007. No such language appears in section 84.160.8, and the principal opinion is in error in construing section 84.160.8(3) as though it does. Indeed, not even the Appellants argued the subsections require the same coverage for active and retired officers prior to the Court raising that as a possible statutory interpretation during oral argument.[5]

Although the legislature has not required the Board to provide retirees with the same level of health coverage it provides active officers, its intent is clear-to ensure that the members of a valued group of public servants, St. Louis' retired police officers, are provided with health insurance. Therefore, it is necessary to determine whether the Board has satisfied that statutory mandate. Appellants argue that the evidence shows that it has not. I agree.

Seven witnesses testified at trial, two for the Appellants and five for the Board, as to the terms of the "basic plan" now being offered to retirees by the Board. While there was testimony that the "basic plan" fits within the definition of a "comprehensive" health insurance policy in the technical meaning of that word, to wit, it provides coverage for several different types of medical expenses, Appellants' challenge to the plan is not about the nature of the services covered. Instead, it is the level of financial coverage for those services that is claimed to be deficient. On that issue, not one of the seven witnesses was aware of another health insurance plan that provides as sparse a benefits package. While isolated components of the "basic plan" may be found in other plans, all the witnesses agreed that the combination of the components in the "basic plan" provides a level of health insurance benefits below all other known health insurance plans.

Susan Carpenter, a certified employee benefit specialist, testified that she was unaware of any group health benefits plan with as high a deductible that was not accompanied by a another feature to ameliorate the financial impact on the insured. She was also not aware of any group health benefits plan with as high a limit on annual in-network, out-of-pocket expenses as the "basic plan." Richard Frank, personnel director for the City of St. Louis, provided similar testimony to that offered by Ms. Carpenter. Samuel Steiner, the department's benefits consultant, testified that he could not recall any plan, that was "as bad in terms of the scope and quality of benefits" as those provided by the "basic plan." Stephen Zoll, an employee of Blue Cross, testified on behalf of the Board that he could not think of any plan in particular that offered as "skinny" a benefits package as the "basic plan." Finally, the department's supervisor of compensation and benefits, Monica Green, testified that, while she knew of two plans with deductibles in the same range, she did not know if they otherwise offset out-

(1) Any employee who retires, or who has retired, and is receiving or is eligible to receive retirement benefits under this chapter to remain or become a member of the group ... and to receive benefits at the same rate as all other members of the group;

5. At oral argument, when asked specifically if the retirees should be provided with the same insurance that active officers are provided, the Appellants' attorney responded in the negative and stated further that "I don't believe that we have ever argued that." Indeed, in reviewing Appellants' briefs in this case, no argument to that effect can be found. During Respondent's appearance before the Court, however, this Court raised the possibility of interpreting the subsections to require the same coverage due to the use of very similar language. Only after this suggestion did Appellant argue on rebuttal that, given the historical nature of the coverage provided under the two subsections, such an interpretation would be appropriate.

of-pocket costs and this made it impossible to meaningfully compare these plans to the proposed base plan. She also said she knew of no other health benefit plans this meager.

In enacting section 84.160.8(3), the legislature did not intend to authorize the Board to provide retirees with a health insurance plan so deficient that it is virtually impossible to find as poor coverage elsewhere on the market. This plan fails to provide a minimally acceptable level of coverage. The Board has, thus, failed to comply with the mandate of the statute.

In his dissent, Judge Limbaugh argues for an interpretation whereby the Board can satisfy its statutory obligations if (1) it provides some health coverage to retirees without charge and (2) the coverage provided is not "illusory." It finds that the Board has met those requirements because, while "not the most generous in terms of deductibles, co-pays, and prescription drug benefits," the "basic plan" does offer "comprehensive medical coverage."

In Missouri cases, insurance policies or individual provisions thereof have been described as "illusory" in two situations. The first is where the title of a type of insurance coverage is misleading as to the actual benefits conferred under the policy. The expected benefits, then, have been described as "illusory." This is most commonly found in the context of underinsured motorist (UIM) coverage, where a layperson may expect a UIM policy to "cover the gap" in the situation in which the insured's total damages exceed a negligent driver's insurance policy limit but that is not, in fact, what the policy operates to do. *See Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673 (Mo.App.1996). *See also Melton v. Country Mutual Ins. Co.*, 75 S.W.3d 321 (Mo.App.2002) (structure of UIM policy made it impossible to receive the policy limit of $50,000).

The second situation is one in which a court has the task of interpreting an ambiguous provision in an insurance contract. In so doing, the courts have favored interpretations that do not render another portion of the policy "illusory" or that might dilute or eliminate coverage. *See, e.g., Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983); *Columbia Mut. Ins. Co. v. Morris*, 887 S.W.2d 675, 678 (Mo. App.1994); *Krombach v. Mayflower Ins. Co.*, 785 S.W.2d 728, 735 (Mo.App.1990).

These cases are not authority for the dissent's application of an "illusory" standard in this case. As noted above, the coverage offered by the plan fails to comport with the intent of the legislature in enacting section 84.160.8(3). Accordingly, I cannot concur with Judge Limbaugh's dissent that the coverage, while low, is adequate to meet the statute's requirements.

### Conclusion

The "basic plan" crafted by the Board is so wanting in quality that it fails to meet the obligations of section 84.160.8(3). The judgment of the circuit court should be reversed and remanded.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

There is not one whit of inference, implication or legislative intent in sections 84.160.8(1) and 84.160.8(3) that requires the board to furnish the same insurance plan for retired officers that it furnishes for active officers. Section 84.160.8(1) states that the board "[s]hall provide or contract for life insurance coverage and for insurance benefits providing health, medical and disability coverage for officers and employees of the department;" section 84.160.8(3) states that the board "[s]hall provide health, medical, and life insurance

coverage for retired officers and employees of the police department." But Judge Teitelman's three-vote "majority" rewrites section 84.160.8(3) so that it now states that the board "shall provide health, medical, and life insurance coverage for retired officers and employees of the police department *at substantially the same level of benefits that are available to active officers.*"

The Teitelman majority is correct that the legislature "provides no guidance as to what minimal extent of coverage will satisfy the requirement that the Board 'shall provide' insurance." My view, however, which is shared by the trial court and the unanimous three-judge panel from the court of appeals, is that the only things that can be gleaned from the absence of that guidance are that 1) some coverage must be provided without requiring the retirees to pay a premium and 2) the coverage provided must not be illusory. The real question then, is whether the basic plan available without payment of premiums is illusory, and the court of appeals' answer to this question again hits the mark:

> [T]he Basic Plan is not the most generous of health care plans in terms of its deductibles, co-pays, and prescription drug benefits. This does not, however, make the health care insurance that it provides an illusory plan. The evidence presented at trial is that the Basic Plan offers comprehensive medical coverage, and as part of the Anthem Blue Cross Blue Shield network, gives its members a choice of over ninety percent of the health care providers in the St. Louis area, and offers prescription drug benefits. The coverage provided by the Basic Plan is not illusory.

Although the concurring opinion suggests that the standard should be whether the coverage is "minimally acceptable," I see no difference in the "not illusory" standard employed by the court of appeals. In any event, I would hold that the coverage here is both minimally acceptable and not illusory.

For these reasons, I would affirm the judgment of the trial court.