THE GOVERNOR'S POLICY RESEARCH OFFICE AND
LAUREN L. HILL, IN HER OFFICIAL CAPACITY AS DIRECTOR
OF THE GOVERNOR'S POLICY RESEARCH OFFICE,
STATE OF NEBRASKA, APPELLEES, V. KN ENERGY,
A DIVISION OF KINDER MORGAN, INC., APPELLANT.

652 N.W.2d 865

Filed November 8, 2002.    No. S-01-1217.

M.J. Bruckner and John C. Fowles, of The Bruckner/Fowles Law Firm, P.C., and B.J. Becker for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellees.

WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Lancaster County District Court found that KN Energy (KNE) lacked standing to challenge a request by the Governor's Policy Research Office (GPRO) for repayment of $390,000 from a revolving loan fund created by the Municipal Natural Gas Regulation Act (Act). The court granted summary judgment in favor of the GPRO in the amount of $390,000 plus interest and costs. KNE timely appealed.

## SCOPE OF REVIEW

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002).

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *In re Application No. C-1889, ante* p. 167, 647 N.W.2d 45 (2002).

## MUNICIPAL NATURAL GAS REGULATION ACT

The Act, Neb. Rev. Stat. §§ 19-4601 to 19-4623 (Reissue 1997 & Cum. Supp. 2000), makes provision for the Municipal Natural Gas Regulation Revolving Loan Fund (Fund). The Fund was created to make loans to municipalities for rate regulation, to pay the costs of administration, and to fund a study of natural gas utility systems. § 19-4617. The GPRO administers the Fund. See *id.* Municipalities which apply for a loan from the Fund must provide a budget statement that specifies the proposed use of the loan proceeds, which may only be used for the costs and expenses incurred by a municipality to analyze rate filings by utilities and establish area-wide rates, and to finance litigation costs of any appeals. *Id.*

The Act provides that the GPRO bills the utility for the amounts disbursed and that the utility may recover these amounts through a special surcharge added to utility bills. See § 19-4617(1)(b). The surcharge may be billed on monthly statements for up to 12 months and shown as a charge for rate regulation expense. *Id.*

## BACKGROUND

KNE provides natural gas to customers within municipalities around the State of Nebraska. The municipalities are divided into 11 geographic rate areas. From February through October 1999, a number of municipalities served by KNE adopted resolutions stating their intention to conduct a review of one or more elements of KNE's total end rate. Four of the rate areas filed applications for loans from the Fund, and payments totaling $390,000 were made to municipalities by the GPRO.

During December 1999, at rate hearings in areas 2, 3, 4, and 7, KNE presented evidence that its current area-wide rates were insufficient (1) to enable it to meet the cost of furnishing natural gas service, including adequate provisions for depreciation of its utility property, and (2) to earn a fair and reasonable return

upon the investment in such property. KNE also presented evidence to show that the disallowance of certain contract costs would exacerbate this insufficiency.

Between February and June 2000, governing bodies in 16 municipalities in rate areas 2, 3, 4, and 7 adopted rate ordinances that prohibited KNE from including in its rates certain above-market costs. On May 30, 2000, the GPRO wrote to KNE requesting payment of $390,000 within 30 days. The $390,000 figure represented loans the GPRO had made in the following amounts: rate area 2, $84,864; rate area 3, $79,482; rate area 4, $106,119; and rate area 7, $119,535.

In a letter dated June 15, 2000, KNE refused to remit the amount, claiming it had no legal obligation to reimburse the Fund. KNE asserted that it had informed the municipalities' attorneys that the review process was flawed and that the hearings were not covered by the Act. KNE stated that it had previously communicated to a division of the GPRO its concerns about the receipt of loans by municipalities that had failed to meet statutory requirements. KNE alleged that it received no response to its concerns.

On July 27, 2000, the Attorney General's office, on behalf of the GPRO, made written demand for the $390,000. In response, KNE reiterated that it was not obligated to repay the amount. Two representatives of KNE met with representatives of the Attorney General's office, and a second written request was sent on October 4. KNE did not respond or make payment.

In December 2000, the GPRO filed a declaratory judgment action against KNE, alleging that it had violated the Act by refusing to pay the requested $390,000. The GPRO alleged that as a result of KNE's refusal, it had been unable to disburse loan proceeds to compensate legal representatives and expert witnesses and for other services necessary to complete the rate review proceedings. The GPRO asked the district court to declare that the requirement for payment of loan amounts in § 19-4617 is direct and unconditional and that KNE has no discretion to decline to pay the amounts billed.

In its answer, KNE asserted what it labeled as "affirmative defenses," including:

a. The [GPRO] did not have legal authority to make the payments from the [Fund because]

i. the municipalities did not conduct a *NEB. REV. STAT.* §19-4618 review;

ii. appropriate resolutions were not adopted by municipalities representing 70% or more of the customers in Rate Areas 2, 3, 4 and 7; and

iii. the resolutions adopted by those municipalities which purported to conduct the review did not conform to the provisions of §19-4618.

b. The amounts . . . include costs incurred by other Rate Areas that did not initiate rate reviews.

. . . .

f. [KNE] has no obligation to reimburse the [GPRO] or the [Fund] for amounts improperly disbursed from the [Fund].

The cities of Alliance, Broken Bow, Burwell, Chappell, Gordon, Kimball, Loup City, Ord, Oshkosh, Ravenna, and Sidney and the villages of Ansley and Hemingford intervened, alleging that appropriate resolutions had been adopted by the municipalities representing 70 percent or more of the KNE customers. Subsequently, the intervenors filed a notice of dismissal without prejudice, stating that their interests were aligned with and adequately represented by the GPRO.

In its reply, the GPRO asserted that KNE lacked standing to assert claims or defenses related to the loan amounts under the Act and that KNE had no discretion to refuse to pay the amounts billed. The GPRO filed a motion for summary judgment and motion in limine.

In granting the GPRO's motion for summary judgment, the district court stated:

Consequently, even if [KNE] is successful with any of its affirmative defenses, [KNE] has no legally protectable interest or right which is benefitted by the relief it requests. [KNE] is not entitled to the avails of the action and has not sustained a direct injury which will be satisfied by success on any of the affirmative defenses.

The district court found that the GPRO had established a prima facie case based upon the following undisputed facts:

1. The municipalities applied for loan funds under NEB. REV. STAT. §19-4617.

2. The GPRO determined the applicants were entitled to receive loan funds authorized by §19-4617.

3. The funds the GPRO distributed to the municipalities were from [the Fund] authorized by §19-4617.

4. The amount of the loan was $390,000.00.

5. [The] GPRO first made demand on [KNE] for repayment of the funds on May 30, 2000.

6. [KNE] failed to make payment of the loan amount within 30 days of when demand was made.

7. [KNE] has not paid any portion of the $390,000.00 loan.

The court concluded that KNE had produced no evidence to rebut or place at issue any of these material facts.

The district court found that the GPRO had established its right to payment from KNE and that KNE had raised no legal issue other than the affirmative defenses already addressed. The court entered judgment as a matter of law against KNE in the amount of $390,000 plus prejudgment and postjudgment interest and costs.

## ASSIGNMENTS OF ERROR

KNE's assignments of error can be summarized into three claims: The district court erred (1) in finding that KNE does not have standing to challenge the request for reimbursement by the GPRO; (2) in ignoring the judgments of the Lancaster County District Court in KN Energy v. Cities of Alliance et al., case No. CI 00-1309; KN Energy v. Cities of Chappell et al., case No. CI 00-1310; and KN Energy v. Village of Hemingford et al., case No. CI 00-1311, involving rate areas 2, 3, and 4, in which the court held that the resolutions and actions of the municipalities in those rate areas did not comply with § 19-4618; and (3) in ignoring the plain and unequivocal language of the Act.

## ANALYSIS

The basis for the district court's judgment was its conclusion that KNE lacked standing to raise the affirmative defenses asserted and that, therefore, there were no material issues of fact in dispute and that GPRO was entitled to judgment as a matter of law. Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record

disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002). The State asserts that once the loan was made, KNE was precluded from objecting to payment. The State claims that after the loan funds were disbursed, KNE had no standing to object to repayment of the loan and that KNE's only remedy was to seek reimbursement from its customers.

KNE asserts that the district court erred in finding that it lacked standing when the issue of standing was not raised by the GPRO in its summary judgment motion. Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Mutual Group U.S. v. Higgins*, 259 Neb. 616, 611 N.W.2d 404 (2000). Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000).

We have held that the requirement of standing is fundamental to a court's exercise of jurisdiction and that either a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. See *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). The district court did not err in addressing the question of KNE's standing in this action.

The remaining question is whether the Act gives KNE standing to challenge repayment of the loan funds. The Act provides that the utility must pay the loan amount to the GPRO within 30 days of billing. The utility is permitted to recover the amount by adding a special surcharge to utility bills for up to 12 months as a rate regulation expense.

The district court addressed the issue of standing in terms of whether KNE was the real party in interest. Neb. Rev. Stat. § 25-301 (Cum. Supp. 2000) provides: "Every action shall be prosecuted in the name of the real party in interest . . . ." In *Eli's, Inc. v. Lemen*, 256 Neb. 515, 527, 591 N.W.2d 543, 552 (1999), we stated:

"To determine whether a party is a real party in interest, the focus of the inquiry is whether that party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy."

Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. See *Hagan v. Upper Republican NRD*, 261 Neb. 312, 622 N.W.2d 627 (2001). In order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000).

Although KNE acknowledged that it did not directly benefit from any of the affirmative defenses, it argued that it is a fiduciary of those who are obligated to repay the loan and that it has a duty to defend on behalf of the ratepayers. The district court found that KNE did not suggest that standing was conferred on it through an assignment of rights from the ratepayers, but its relationship with its customers "appears to be no different than that which exists between any purveyor of goods and the purveyor's customer." The court concluded that the Act did not confer any responsibility on KNE as a fiduciary and that KNE had no standing to raise issues belonging to its customers.

The district court then addressed KNE's assertion that it has a legitimate interest in the outcome because KNE incurred expenses defending the rate reviews which were instigated as a result of the funding provided by the loan. KNE claimed it incurred expenses in cases that were decided earlier in the Lancaster County District Court and were on appeal at the time of the final order in this case. The court stated that Neb. Rev. Stat. § 25-10,105 (Reissue 1995) provides that costs are determined and assessed by the trial court at the time of judgment. Shifting of attorney fees and costs is allowed only by statute or where the uniform course of procedure has been to allow recovery of fees. The court found that in the prior rate cases, each

party was ordered to bear its own costs, and that those judgments are res judicata as to the issue of KNE's costs in this case. Therefore, the court concluded that KNE did not have standing to raise affirmative defenses in this case merely because it was forced to defend the earlier rate cases.

KNE also argued that if it did not have standing to raise the affirmative defenses, no other party had standing. The district court stated:

> That is not an issue this court must resolve. It is worth noting that some issues in this world do not involve disagreements that are suitable for decision by courts. *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999). Some disputes are purely political. On some issues, it is up to the electors to determine whether an action of government is one which warrants retention or discharge of their elected officials. Whether this is one of those cases, or is one for which a remedy is available to an entity with standing is left for another case. [KNE] does not possess standing to raise the affirmative defenses.

■ In addressing the issue of standing, we must consider the entire Act and its purpose. Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *In re Application No. C-1889, ante* p. 167, 647 N.W.2d 45 (2002). The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Ottaco, Inc. v. McHugh*, 263 Neb. 489, 640 N.W.2d 662 (2002).

■ We conclude that KNE has standing to question whether there has been a proper disbursement of funds under the Act. An administrative agency such as the GPRO has limited power, and its power is to be strictly construed. The Legislature may delegate to an administrative agency the power to make rules and regulations to implement the policy of a statute. *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995). However, this delegated authority is limited to the powers delegated to the agency by the statute which the agency

is to administer. See *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000). The GPRO must adhere to the Act in disbursing loans from the Fund.

The Act requires that the utility reimburse the Fund within 30 days of the demand and that to recover the amount, the utility must surcharge its customers within 12 months. The question of whether the GPRO acted in excess of its authority in making an unauthorized distribution relates to the utility's interest in having to surcharge its customers to recover a distribution that may not have been authorized. KNE, which is being requested to pay $390,000, has a real interest in the subject matter of the controversy. Its interest in the matter is more than a general interest common to all members of the public.

Sections 19-4617 and 19-4618 set forth the terms and conditions under which a loan may be made by the GPRO to the requesting municipality. Under § 19-4617(1)(b), loans are required to be repaid by the utility, which may then recover the amount through a special surcharge on customers.

We conclude that a utility which is subject to the terms of the Act has standing to challenge the validity of the GPRO's actions if and when the utility alleges that amounts were improperly disbursed from the Fund or if it is alleged that the GPRO has exceeded its authority granted by the Legislature. The affirmative defenses raised by KNE present questions of both law and fact regarding these issues that prevent the case from being summarily decided. The district court erred in concluding that KNE lacked standing and therefore erred in granting summary judgment to the GPRO.

## CONCLUSION

KNE has standing to assert defenses to the GPRO's demand for payment. Therefore, the judgment of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

HENDRY, C.J., and CONNOLLY, J., not participating.