IN RE GUARDIANSHIP OF MICHAEL R. GILMORE,
AN INCAPACITATED PERSON.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLEE, V. AEHUL GILMORE, APPELLANT.

662 N.W.2d 221

Filed May 27, 2003.   No. A-02-154.

Margaret Mark O'Connor for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellee.

IRWIN, Chief Judge, and HANNON and CARLSON, Judges.

HANNON, Judge.

## INTRODUCTION

On the petition of the Nebraska Department of Health and Human Services (the Department), the county court removed Aehul Gilmore as guardian of her adult son Michael R. Gilmore and appointed a successor guardian who was without priority under the statute. Aehul appeals, alleging that the Department did not have standing to institute the proceeding; that the court did not follow required procedures in that it did not appoint a visitor, a guardian ad litem, or an attorney for Michael; and that it removed her without proof that she was unfit or had forfeited her right to be guardian. We conclude that the Department had standing; that under the facts in this case, neither a visitor, a guardian ad litem, nor an attorney for Michael was required; and that there were adequate grounds for removing Aehul and appointing a successor. We therefore affirm.

## BACKGROUND

To avoid unnecessary repetition, we shall set forth some basic background information here but save discussion on many of the facts for the analysis portion of this opinion.

Michael, Aehul's son who was 19 years old at the time of trial, suffers from autism, is mentally retarded, is basically non-verbal, weighs approximately 400 pounds, and is unable to care for himself. He is supposed to take antiseizure medication three times per day. On June 26, 2001, Aehul and Michael's father were appointed Michael's coguardians. Michael's father died in a traffic accident on July 23.

It appears from the record that Michael lived at home with his parents and his brother, Steven Gilmore, up until June 4, 2001, when he was placed at Envisions Incorporated (Envisions), a corporation providing residential and vocational services. Aehul removed Michael from Envisions on June 13, but wanted to return him on June 15 because Steven had moved out of the family home. Envisions agreed to take Michael back on June 19. On July 18, Michael was admitted to the Beatrice State Developmental Center (BSDC), and he was discharged from BSDC on November 14 with a number of recommendations for his care and treatment, the most important being the implementation of a structured

schedule for Michael to adhere to on a daily basis. After this discharge, he returned to Envisions. Aehul hoped to remove Michael from Envisions prior to the completion of his treatment and move with him to Kansas.

On September 17, 2001, the Department filed a petition to remove Aehul as guardian and to appoint Robert Gilmore, Michael's uncle, as her successor. At a hearing held on January 2, 2002, a doctor who had cared for Michael for approximately 2 years; Dr. Audrey Courtney, a psychologist at BSDC; Michele Schukar, a service coordinator for the Department; the chief executive officer of Envisions; a social worker for the Papillion-La Vista Public Schools; and Robert, the proposed successor guardian, were called as witnesses for the Department. Aehul and her son Steven were called as witnesses by Aehul.

On January 8, 2002, the court entered an order removing Aehul as Michael's guardian. It found that Michael continued to be incapacitated, that there was clear and convincing evidence that a full guardianship was necessary, that one of Michael's two coguardians had died, and that it was in the best interests of Michael that Aehul be removed as guardian. The court appointed Robert as the sole successor guardian.

## STANDARD OF REVIEW

One of the issues presented by this appeal is that of the standing of the Department to bring this action. Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002). A question of jurisdiction is a question of law. *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001). Statutory interpretation also presents a question of law. *Governor's Policy Research Office v. KN Energy, supra*. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

Another question presented by this appeal is whether the trial court followed the necessary procedures when it failed to appoint a visitor, a guardian ad litem, or an attorney on behalf of

Michael. The appointment of an attorney or a guardian ad litem for a person alleged to be incapacitated is within the court's discretion. Neb. Rev. Stat. § 30-2619 (Cum. Supp. 2002). Likewise, the appointment of a visitor is within the court's discretion. Neb. Rev. Stat. §§ 30-2619.01 and 30-2623 (Reissue 1995).

On questions of fact—in this case, whether the evidence justifies the removal of Aehul—an appellate court reviews probate cases for error appearing on the record made in the county court. See, *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001); *In re Guardianship & Conservatorship of Hartwig, ante* p. 526, 656 N.W.2d 268 (2003). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Conservatorship of Anderson*, 262 Neb. 51, 628 N.W.2d 233 (2001); *In re Guardianship & Conservatorship of Hartwig, supra.*

## ASSIGNMENTS OF ERROR

Aehul alleges the court erred (1) in permitting the Department to bring the termination action when the Department lacked standing to do so; (2) in removing her as Michael's guardian without appointing a visitor, attorney, or guardian ad litem for Michael; (3) in failing to appoint a visitor, attorney, or guardian ad litem for Michael; (4) in removing her as Michael's guardian and appointing a successor who did not have statutory priority over her; (5) in appointing a successor who did not have statutory priority over Steven, Aehul's other son; and (6) in removing Aehul as guardian without proving that she was unfit to serve as guardian or that she had forfeited her superior right as natural parent.

## ANALYSIS

*Standing of Department to Bring Action.*

Aehul argues that the Department does not have "the authority to meddle in this situation where not only a guardianship, but also a placement had already been set up." Brief for appellant at 15. Section 30-2623(a) provides that "[o]n petition of the ward or *any person interested in his welfare*, the court may remove a guardian and appoint a successor if in the best interests

of the ward." (Emphasis supplied.) The Department contends that it is interested in the health and welfare of Michael and is therefore an appropriate party to petition for the removal of Aehul.

The phrase "interested person" is included in the Nebraska Probate Code, Neb. Rev. Stat. §§ 30-2201 to 30-2902 (Reissue 1995 & Cum. Supp. 2002), a multitude of times. Section 30-2209(21) defines an "interested person" thus:

> Interested person includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may be affected by the proceeding. It also includes persons having priority for appointment as personal representative, and other fiduciaries representing interested persons. *The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.*

(Emphasis supplied.) The emphasized part of the above definition would appear to give that otherwise narrow definition considerable breadth. However, the phrase "interested person" does not appear in the applicable statute, § 30-2623, and therefore, we do not consider that definition controlling.

Significantly, the phrase in § 30-2623 is "any person interested in his welfare." We find that the phrase "person interested in his [or her] welfare" appears only in those statutes dealing with protected persons. The following statutes from chapter 30 of the Nebraska Revised Statutes use that phrase or a similar expression of the same notion and do not use the phrase "interested person": § 30-2613(1)(d) (powers of guardian), § 30-2616(a) (resignation or removal of guardian), § 30-2645(a) (petitions for orders subsequent to appointment of conservator), and Neb. Rev. Stat. § 30-3514(f) (Cum. Supp. 2002) (removal of custodial trustee). Section 30-2619(a), which deals with the procedure for the appointment of a guardian of a protected person, contains both phrases.

We conclude that by using the phrase "any person interested in his welfare," § 30-2623, or the similar expressions of the same notion that are used in the above statutes, the Legislature intended to allow persons who are interested in a

protected person, but who do not satisfy the definition of "interested person," to bring matters affecting the welfare of protected persons to the attention of the local probate court. Nebraska statutes have long defined broadly who could bring an action for the appointment of a guardian of an incapacitated person. See Neb. Rev. Stat. §§ 38-201 and 38-404 (Reissue 1960), both of which controlled such matters before the adoption of the Uniform Probate Code in 1974 provided that a petition for the appointment of a guardian of an incapacitated person may be brought by a "relative or friend." See §§ 38-201 and 38-404 (Reissue 1974).

We believe that by such statutes, the Legislature was recognizing that frequently, a person that is in need of a guardian or conservator cannot be protected solely by those meeting the statutory definition of an "interested person." Sometimes, persons in need of a guardian or conservator have no relatives or at least none that care. Sometimes, the relatives of such people are prevented from serving the best interests of the protected person by avarice, greed, self-interest, laziness, or simple stupidity. Frequently, a neighbor, an old friend, the child of an old friend, a member of the clergy, a banker, a lawyer, a doctor, or someone else who has been professionally acquainted with the person needing such help will come forward out of simple charity and bring the matter to the attention of the local probate court. Sometimes, unscrupulous relatives need supervision. It would appear that the above statutes are worded to allow people without a legal interest to bring the matter to the local court's attention. We find nothing wrong with a public agency such as the Department coming forward on such matters, particularly when the Department is quite likely to be supplying financial assistance for the ward. Of course, the county judge, under the applicable standard of review, can make the determination of whether the petitioner is really interested in the welfare of the person subject to the proceedings.

The Department is a legal entity and hence is a "person" under the definition of § 30-2209(32). We conclude that under §§ 30-2616 and 30-2623, the Department can petition for Aehul's removal if there is sufficient evidence to support a finding that the Department is interested in Michael's welfare.

*Failure to Appoint Visitor, Attorney, or Guardian Ad Litem*
*for Michael and Removal of His Guardian*
*Without Such Appointment.*

Aehul next argues that because Michael cannot read or speak, his right to notice of and participation in the proceedings is "meaningless for him without the assistance of a visitor, attorney or guardian ad litem to represent his interests, and his interests alone." Brief for appellant at 1.

Section 30-2619(b), providing for the appointment of an attorney for a person alleged to be incapacitated; § 30-2619.01, providing for the appointment of a visitor for such a person; and § 30-2623(c), providing for the appointment of a visitor before removing a guardian, all provide that the court "may" make such appointment. In this particular case, the issue before the court dealt with Aehul's competency to serve as guardian. Michael was clearly incompetent to protect his own best interests. It is readily apparent to us, and was to the trial judge, that the issues raised were well represented and that the appointment of additional officials would have added nothing to the proceedings but additional expense. We therefore conclude that the trial judge did not abuse his discretion when he did not appoint the additional officials Aehul argues he should have appointed.

*Appointment of Robert as Successor Guardian.*

Insofar as the removal of Aehul as guardian is concerned, § 30-2623 provides in significant part that "the court may remove a guardian and appoint a successor if in the best interests of the ward." The trial court made the required finding.

Aehul assigns numerous errors with respect to the appointment of Robert as Michael's successor guardian. Specifically, she alleges that the court erred because Robert did not have statutory priority over her, Robert did not have statutory priority over Steven, and the Department failed to prove either that Aehul was unfit to serve as guardian or that she had forfeited her superior right as a natural parent.

The priorities for who may be guardian are set forth in § 30-2627. Subsection (a) provides in part that "[n]othing in this subsection shall prevent the spouse, adult child, parent, or other relative of the person alleged to be incapacitated from being

appointed guardian." There does not appear to be a dispute that Robert, Michael's uncle, has little or no priority over either Aehul or Steven, Michael's brother. However, subsection (c) states in part that "[w]hen appointing a guardian, the court shall take into consideration the expressed wishes of the allegedly incapacitated person. The court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having lower priority or no priority." Thus, the key inquiry that we must make is whether the appointment of Robert, rather than Aehul or Steven, as Michael's guardian was in Michael's best interests.

Several witnesses testified regarding their concerns about Aehul's care of Michael. These witnesses testified as to Aehul's admitted inability to control Michael in her home, especially his eating. Steven was living with Aehul and Michael when Michael was breaking things, overeating, and smearing feces throughout the house. Concern was also raised regarding Aehul's ability to properly administer Michael's medication. Schukar, the service coordinator, and Dr. Courtney both testified that Aehul had said that she felt Michael presented a threat to her life.

Dr. Courtney testified that sometimes, Michael returned to BSDC from visits with Aehul with a bowel movement in his pants, which issue caused concern because while Michael was in treatment, the BSDC staff was not having problems with his having bowel movements in his pants. Dr. Courtney also testified that she felt Michael was capable of learning many more things and that he was making progress in other behaviors.

Schukar testified that in June 2001, Aehul took Michael out of Envisions because she felt like "God was punishing her"; but then Aehul returned Michael to Envisions 2 days later because Steven had moved out of the family home and Aehul was unable to handle Michael by herself. Schukar testified that Aehul told her in August that she wanted to take Michael out of treatment before he completed the program and move to Kansas, where Michael would attend the "Sunflower Program" during the day and live with Aehul at night, but Schukar testified that she learned that the Sunflower Program had no openings and did not foresee having any openings in the future. Schukar further testified that a few days later, Aehul told Schukar that she wanted to

take Michael to Kansas and watch him 24 hours a day, 7 days a week. Schukar testified that she was concerned about Aehul's inability to know what is best for Michael's health and safety.

Aehul's testimony reveals that even if the court determined Envisions to be the best environment for Michael, Aehul was not sure whether she would allow him to stay in Envisions, and that she wants to bring him home to care for him herself. Steven testified that he would be willing to take over the guardianship, but that no one had offered that to him. Robert testified that he was concerned about Aehul's ability to care for Michael and that his greatest concern was Michael's welfare.

The evidence shows that Aehul has difficulty properly caring for Michael, that she tends to take actions that are not in Michael's best interests, and that she may not follow orders that the court determines to be in Michael's best interests. The evidence does not show that Steven has taken any action to be appointed the successor guardian or that his appointment as guardian would be in Michael's best interests. In our review of the evidence, we cannot say that the court committed error in finding that Michael's best interests would be served by removing Aehul and appointing Robert as Michael's successor guardian.

## CONCLUSION

We conclude that the county court's order removing Aehul as Michael's guardian and appointing Robert as successor guardian conformed to the law, was supported by competent evidence, and was neither arbitrary, capricious, nor unreasonable.

AFFIRMED.

IRWIN, Chief Judge, dissenting.

I respectfully dissent from the conclusion reached by the majority that the Department had standing to bring the present action for removal of Aehul as guardian of her son Michael. There is no authority for concluding that the Legislature intended to attach to the phrase "person interested" ("in the welfare of a ward," § 30-2616(a)) a meaning significantly different from that attached to the phrase "interested person" as defined in § 30-2209(21). Under the statutory definition of "interested person," there is no authority for concluding that the present record establishes the Department to be an "interested person," which

establishment is a prerequisite to finding that the Department had standing to bring this action.

There is no dispute that the requirement of standing is fundamental to a court's exercising jurisdiction. *Ritchart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999). Only a party who has standing may invoke the jurisdiction of the court. *Rice v. Adam*, 254 Neb. 219, 575 N.W.2d 399 (1998). To have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Ritchart v. Daub, supra.* Standing requires that a litigant have such a personal stake in the outcome of the controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Id.* Finally, for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. *Id.*

The threshold issue in the present case is whether the Department had standing to bring this action. The record fails to establish that the Department had standing, and, accordingly, the county court's order removing Aehul as Michael's guardian should be reversed and the petition dismissed. None of the grounds for standing asserted by the Department are supported by the record in this case, and there is no authority for the grounds for standing espoused by the majority opinion.

The Department alleged in the petition that this action was being filed pursuant to § 30-2619 and Neb. Rev. Stat. § 83-383(2) (Reissue 1999). Neither of these provisions, however, acts to grant the Department standing to seek the removal of Aehul; both of these sections provide a mechanism for the initial appointment of a guardian and have no application to seeking removal of an already-appointed guardian. Even if § 30-2619 could be invoked to seek the appointment of a new guardian when somebody else is already serving in that role, a finding for which no authority has been discovered, for the Department to have standing under § 30-2619, the Department would have to demonstrate that it is a "person interested in [Michael's] welfare." On appeal, the Department argued that standing to bring the present action was conferred by § 30-2623, which specifically confers upon "the

ward or any person interested in his welfare" standing to seek the removal or resignation of an already-appointed guardian. As such, the issue appears to come down to whether the Department is a "person interested" in Michael's welfare.

There is no definition, either in the statutes or in case law, for the term "person interested." There is, however, a definition in § 30-2209(21) for the term "interested person." That definition specifically includes heirs, devisees, children, spouses, creditors, beneficiaries, and others having a property right in or claim against a ward's estate, as well as persons having priority for appointment as personal representative. The record presented to us in this case contains nothing to support a finding that the Department is an "interested person" under this definition of the term, which term is used throughout the Nebraska Probate Code. Significantly, it does appear from the record that the person who was ultimately appointed as Michael's successor guardian may well have satisfied the definition of "interested person" and could have sought Aehul's removal.

The only portion of the definition which could arguably apply to the Department is that "interested person" includes "creditors . . . and any others having a property right in or claim against . . . the estate" of Michael. See § 30-2209(21). The record before us does not indicate that the Department is a creditor or has a property right in or claim against Michael's estate. Specifically, the record before us does not contain any evidence to indicate what portion of Michael's care was actually paid for by the Department, if any; does not contain any evidence to indicate that payment for any of these services made the Department a creditor; and at most indicates that the Department assists families such as Michael's by coordinating services, applying for funding for families, and paying for *some* of the services received.

The Department argued on appeal that "Michael had been in the care of the Department and Envisions[,] who have posed a growing concern as to [Aehul's] ability to serve as Michael's guardian." Brief for appellee at 6. The record, however, does not indicate that Envisions is operated under or by the Department such that Michael has been "in the care of the Department" and contains no evidence to indicate that Michael's care at the

Envisions facility in any way provided the Department with a property right in or claim against Michael's estate.

In addition, the last sentence of the definition of "interested person," that the meaning as it relates to particular persons may vary and must be determined according to the particular proceeding, see § 30-2209(21), does not broaden the scope of who may qualify as an "interested person." Indeed, in a variety of contexts, many other jurisdictions have indicated that this last sentence serves to allow courts to find that the parties who might otherwise qualify as "interested persons" do not qualify in a particular proceeding. See, *Estate of Thorne*, 704 A.2d 315 (Me. 1997) (intervention in probate proceeding); *In re Estate of Juppier*, 81 S.W.3d 699 (Mo. App. 2002) (challenge to appointment of guardian); *Taylor v. Taylor*, 47 S.W.3d 377 (Mo. App. 2001) (settlement of conservatorship estate); *Matter of Walker*, 875 S.W.2d 147 (Mo. App. 1994) (appointment of guardian and conservator); *Estate of Miles v. Miles*, 298 Mont. 312, 994 P.2d 1139 (2000) (probate of will). See, also, *In re Marital Trust Under Last Will and Testament of Wilfred Wolfson*, No. C7-00-131, 2000 WL 978723 (Minn. App. July 18, 2000) (not designated for permanent publication) (petition for appointment of cotrustee and removal of trustee). "The last sentence of the statutory provision does not broaden the definitional reach of 'interested person.'" *Estate of Thorne*, 704 A.2d at 318.

Consistently with this interpretation, other jurisdictions have generally held that to be an "interested person," a litigant must possess a present financial or property interest in the estate of the protected person. See, *Estate of Thorne, supra*; *In re Estate of Juppier, supra*; *Taylor v. Taylor, supra*; *Matter of Walker, supra*; *Estate of Miles v. Miles, supra*; *In re Marital Trust Under Last Will and Testament of Wilfred Wolfson, supra*. "An interested person . . . will always possess an interest in the estate itself." *Estate of Thorne*, 704 A.2d at 318. In fact, in *In re Estate of Juppier, supra*, the Missouri Court of Appeals held that paternal grandparents were not "interested persons" for the purpose of seeking the removal of their grandchild's guardian, because they lacked a financial interest in the grandchild's estate. To grant standing to someone with a purely sentimental or filial interest in a ward or protected person would

be in direct contravention of legislative intent. *Matter of Walker, supra.*

The record before us fails to include any evidence from which it could be determined that the Department satisfies the statutory definition of "interested person." The majority opinion does not dispute this conclusion, but, rather, concludes that the definition of "interested person" is not controlling because the guardian removal statute, § 30-2623, uses the phrase "person interested" instead of "interested person."

There is no authority for the majority's conclusion that "person interested" should be given some different and vastly broader meaning than the term "interested person." Significantly, neither statute nor case law defines the term "person interested" to suggest that the ordering of the two words should result in a different meaning. Similarly, there is no authority for concluding that the Legislature was recognizing the need to grant the right to seek removal of an established guardian to "a neighbor, an old friend, the child of an old friend, a member of the clergy, a banker, a lawyer, a doctor, or someone else who has been professionally acquainted with the person needing such help." There is no authority for the proposition that such people will frequently come forward "out of simple charity" or for the proposition that "the above statutes are worded to allow people without a legal interest" to invoke the power of the court. Indeed, it is a longstanding and undisputed proposition that people without a legal interest explicitly cannot "bring the matter to the local court's attention." See *Ritchart v. Daub,* 256 Neb. 801, 594 N.W.2d 288 (1999). That is the very crux of the jurisdictional requirement of standing.

The problem with a public agency such as the Department "coming forward" on matters such as the present case is that there is no authority for such an agency to invoke the jurisdiction of a court to seek the removal of a guardian such as Aehul. This should be particularly so when the record fails to establish that the agency, like the Department herein, is "quite likely to be supplying financial assistance for the ward," as the majority herein concludes. Although the majority's conclusion that "the county judge, under the applicable standard of review, can make the determination of whether the petitioner is really interested in the

welfare of the person subject to the proceedings" is correct, the county judge's determination must be guided by legal rules. The only established legal rules in this situation are those that guide the determination of whether the Department is an "interested person," and under the applicable standard of review, the county court committed reversible error in finding that the Department had standing. As such, I would find that the Department lacked standing and that the county court's order removing Aehul as Michael's guardian should be reversed.