not paid directly to employees. Thus, the City's contribution to the pension fund based upon the additional compensation which it was required to pay to the firefighters for 2008 should be included in the amount utilized to calculate the attorney fee award.

### (c) Computation of Award

The City was required to pay a total of $1,515,718.20 in additional wages and benefits due under the 2008 and 2009 CIR orders. This amount includes the $259,118 in pension contributions made by the City to the pension fund. Because the firefighters have recovered a judgment on appeal, they are entitled to an attorney fee award of at least $378,929.55, representing 25 percent of the wages due. We decline to award additional attorney fees in this case.

### V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause to the district court with directions to enter judgment for the firefighters and against the City in the amount of $378,929.55, representing the statutory attorney fee award for recovery of judgment on appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

Wright, J., participating on briefs.

---

In re Guardianship and Conservatorship of Donald D. Barnhart, a person in need of protection.
Alice F. Barnhart and Sherry Heady, appellees, v. Valley Lodge 232 A.F. & A.M. et al., appellants.

___ N.W.2d ___

Filed March 6, 2015.    No. S-14-420.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.
2. **Jurisdiction.** The question of jurisdiction is a question of law.
3. **Statutes.** Statutory interpretation presents a question of law.

4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.

5. **Guardians and Conservators: Appeal and Error.** An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court.

6. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

7. **Standing: Words and Phrases.** Standing is the legal or equitable right, title, or interest in the subject matter of a controversy.

8. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

9. **Actions: Jurisdiction.** Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.

10. **Judgments: Appeal and Error.** An appellate court can determine whether or not there is standing independent of the lower court's determination.

11. **Actions: Guardians and Conservators.** In contesting a guardianship, an objector must show a true interest or attentiveness to the well-being and protection of the ward.

12. **Guardians and Conservators: Standing.** In a guardianship or conservatorship proceeding, where an objector has no concerns for the ward's welfare but only concerns of its own potential financial expectancy, such concerns do not give the objector standing to challenge a guardianship or conservatorship as "any person interested in [the ward's] welfare" under Neb. Rev. Stat. § 30-2619 or § 30-2645 (Reissue 2008).

13. **Actions: Guardians and Conservators.** A conservatorship proceeding is not an adversarial proceeding. Rather, it is a proceeding to promote the best interests of the person for whom the conservatorship is sought.

14. **Wills.** Wills, by their nature, are ambulatory.

15. **Decedents' Estates: Wills.** A beneficial interest in a will does not vest until the testator's death.

16. **Appeal and Error.** New theories cannot be presented on appeal.

17. **Guardians and Conservators: Wills: Standing.** Beneficiaries under a will do not have standing to contest a guardianship or conservatorship by virtue of their interests as beneficiaries of the will alone.

18. **Due Process: Evidence: Words and Phrases.** A formal "evidentiary hearing" is not necessary before the court makes a finding in a case. The required procedures may vary according to the interests at stake in a particular context, but the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. It is enough that the parties have an opportunity to present evidence.

19. **Courts: Pretrial Procedure.** It is not the duty of the court to inform litigants of the evidence they need to submit in order to support their motions.

Appeal from the County Court for Douglas County: Marcela A. Keim, Judge. Affirmed.

Michael C. Cox, Heather Voegele-Andersen, Brenda K. Smith, and John V. Matson, of Koley Jessen, P.C., L.L.O., for appellants.

Daniel J. Guinan and David C. Mullin, of Fraser Stryker, P.C., L.L.O., for appellees.

Heavican, C.J., Connolly, Stephan, McCormack, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

Donald D. Barnhart (Barnhart) is deemed incapacitated and in need of protection. His wife, Alice F. Barnhart, and his stepdaughter, Sherry Heady, petitioned to become his coguardians and coconservators. The guardianship and conservatorship is contested by alleged beneficiaries of Barnhart's prior will. These parties contend that they are interested parties to Barnhart's welfare and, thus, have standing to contest the will. The prior beneficiaries are Valley Lodge 232 A.F. & A.M.; Chrysolite Lodge No. 420 A.F. & A.M.; Alegent Health Community Memorial Hospital of Missouri Valley, Iowa; and Senior Citizens of Western Harrison County, Iowa, Inc. (collectively the objectors). The issue in this case is whether or not the objectors are "any person interested in [Barnhart's] welfare" under Neb. Rev. Stat. § 30-2619 (Reissue 2008) when their only claimed interest in the case is a beneficial interest in a will.

## BACKGROUND

### Barnhart's Assets and Estate Plan

Barnhart's assets include farmland that has not yet been appraised, but is "in excess of 400 acres" located in Harrison County, Iowa; an investment account valued at $91,000; a checking account valued at $89,000; and a 2007 Honda Accord valued at $7,000.

In 2000, Barnhart executed a will (the 2000 will). At that time, he was not married and did not have any children. The 2000 will left 40 percent of Barnhart's residual and remainder estate to Valley Lodge No. 232 A.F. & A.M., 20 percent of his residual and remainder estate to Chrysolite Lodge No. 420 A.F. & A.M., 20 percent of his residual and remainder estate to Alegent Health Community Memorial Hospital of Missouri Valley, and 20 percent of his residual and remainder estate to the Senior Citizens of Western Harrison County.

In 2003, Barnhart married Alice. As Barnhart's wife, Alice is his closest living relative. Heady is Alice's daughter and is Barnhart's attorney in fact under a durable power of attorney document executed on November 8, 2009.

Barnhart's brother died in 2012. Barnhart's brother left all of his residue to the same organizations named in Barnhart's 2000 will—the objectors in this case. Alice and Heady allege that Barnhart decided he did not want his estate to go the same way as his brother's and decided that instead, he wanted his property to go to Alice.

In November 2012, Barnhart executed a new estate plan, including a will and a trust agreement creating the Donald Barnhart Revocable Trust (2012 estate plan). Alice and Heady are the beneficiaries of the 2012 estate plan. The objectors, beneficiaries of the 2000 will, are not designated as beneficiaries of the 2012 estate plan.

## ORIGINAL PETITIONS FOR GUARDIANSHIP AND CONSERVATORSHIP

The exact date of Barnhart's incapacity is uncertain, but in affidavits to the court, Heady states that Barnhart was admitted to the hospital in the spring of 2013 with the sudden onset of severe psychological symptoms. At that time, Barnhart was declared a "'danger to himself and others.'" Subsequently, Barnhart was placed in the Douglas County Health Center and remains there to this date. Heady states in her affidavit to the court that Barnhart's condition renders him unable to make "responsible decisions concerning his medical care or his finances."

Heady states that she attends meetings with the professionals at Douglas County Health Center once every 3 months to discuss Barnhart's treatment. Heady also states that she visits Barnhart on a weekly basis.

On November 27, 2013, Alice and Heady petitioned for appointment of emergency temporary and permanent coguardians and coconservators in the county court for Douglas County, Nebraska. On the same date, the petition for temporary coguardianship and coconservatorship was granted by the county court, and Alice and Heady became temporary coguardians and coconservators.

On January 21, 2014, the objectors filed in the county court a joint "Objection to Amended and Corrected Petition for Appointment of Emergency Temporary and Permanent Co-Guardians and Co-Conservators of an Incapacitated Person." The objectors claim that the guardianship and conservatorship contest is in the best interests of Barnhart because his "step-daughters" were depleting and/or wasting his estate.

### Proceedings in County Court

On March 4, 2014, the county court held a hearing on the issue of standing. All parties were asked to brief standing prior to the March 4 hearing. All parties were aware that the purpose of the hearing was to consider the issue of standing. At the hearing, the county court asked for a copy of the current estate documents before making its rulings on standing. The documents were reviewed in camera, and the objectors did not object to the viewing, nor did they proffer any further evidence or ask for a continuance or further hearing to do so.

At the hearing on March 4, 2014, the county court asked the objectors what kind of relationship Barnhart had with the objecting charities. The attorney for the objectors responded that "to be a hundred percent honest with you, I don't know what — how deep the relationship went, but [Barnhart] certainly felt strong enough to make gifts to them." Further, in the objection to the amended petition for appointment of guardianship and conservatorship, it states that the objectors "are without sufficient information and belief regarding the need

for a guardian." Instead, the objection states that the reason for the guardianship and conservatorship contest is "[b]ased upon interest and belief [that Barnhart's] estate is being depleted and/or wasted . . . ." At the hearing, the objectors' attorney stated that "we felt we had evidence on the financial side because of land transfers, those kinds of things."

At the conclusion of the March 4, 2014, hearing, the county court stated that if it found the "interested parties" have standing, then it would hold a formal evidentiary hearing, including a pretrial process. All parties at the hearing left the hearing with notice that the court was making its ruling on standing prior to a formal evidentiary hearing, on the basis of the arguments at the hearing and after viewing the 2012 estate plan documents.

After the hearing, on March 12, 2014, the court issued an order finding that the objectors did not have standing to contest the guardianship and conservatorship. The court found that *In re Guardianship of Gilmore*[1] was distinguishable from the present case, because in Barnhart's case, the objectors' interest in Barnhart is "not altruistic, it's financial." In its order, the county court said the objectors "are not genuinely interested in the overall well being of . . . Barnhart during his lifetime. Their concerns stem directly from a financial interest in the outcome of the distribution of his estate after death."

Soon after the order was released, the objectors filed a motion to alter or amend judgment on the basis that evidentiary findings were made without an evidentiary hearing. Later, at a hearing on April 2, 2014, the objectors argued that they were entitled to have an evidentiary hearing on the issue of standing. The objectors argued that an evidentiary hearing must be held if the court made its standing ruling on the basis of evidentiary findings.

The objectors explained to the court their concern about evidentiary findings. The attorney for the objectors stated that they were concerned that comments in the order may be taken as court findings on factual and evidentiary issues. If so, this would create a preclusion issue for the objectors when and if

---

[1] *In re Guardianship of Gilmore*, 11 Neb. App. 876, 662 N.W.2d 221 (2003).

they later wish to challenge Barnhart's capacity at the time of the 2012 estate plan.

At the April 2, 2014, hearing, the court stated:

> Basically, it was a situation where everybody kind of agreed for me to take a look at the will in-camera so . . . I went ahead and did that. . . . I wasn't trying to make a determination whether you are, in fact, takers under the will. I wasn't looking at anything like that.

The court further explained:

> I acknowledge we did not have an evidentiary hearing. We didn't have one. And, in my opinion . . . you didn't have standing. And I wasn't trying to make any sort of evidentiary rulings because I acknowledge 100 percent it was not an evidentiary hearing. So, I suppose, if you're requesting that I . . . clarify that by saying it was not an evidentiary hearing, by saying that *my order is limited to standing* . . . I don't necessarily have a problem doing that, that wasn't my intention to expand the scope of the proceedings at all, I was just trying to basically explain my findings without . . . doing what some people do, which is say, "You don't have standing, end of story."

(Emphasis supplied.)

After the April 2, 2014, hearing, the county court issued an order stating that its March 12 order was a ruling only on standing and did not "expand the nature of the proceeding."

## ASSIGNMENTS OF ERROR

The objectors assign as error, restated, as follows: (1) the county court's determination that the objectors did not have standing to challenge the guardianship and conservatorship proceedings, and thus finding that Alice and Heady are proper guardians, and (2) the county court's making of evidentiary findings without an evidentiary hearing.

## STANDARD OF REVIEW

[1-4] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the

jurisdiction of a court.[2] The question of jurisdiction is a question of law.[3] Statutory interpretation also presents a question of law.[4] When reviewing questions of law, we resolve the questions independently of the conclusion reached by the lower court.[5]

[5,6] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in the county court.[6] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7]

## ANALYSIS

### Standing to Contest Guardianship or Conservatorship as "any person interested in his or her welfare"

The issue in this case is whether or not the objectors are "any person[s] interested in [Barnhart's] welfare" under § 30-2619, when their only claimed interest in the case is a potential beneficial interest in a will. We conclude that the objectors are not.

[7,8] Standing is the legal or equitable right, title, or interest in the subject matter of a controversy.[8] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[9] Before reaching the legal issues presented for review, it is the

---

[2] *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002).

[3] *Nebraska Dept. of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308 (2001).

[4] *Governor's Policy Research Office v. KN Energy, supra* note 2.

[5] See *id*.

[6] *In re Guardianship & Conservatorship of Cordel*, 274 Neb. 545, 741 N.W.2d 675 (2007).

[7] *Id*.

[8] *Ferer v. Aaron Ferer & Sons*, 278 Neb. 282, 770 N.W.2d 608 (2009).

[9] *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

duty of an appellate court to determine whether it has jurisdiction over the matter before it.[10]

[9,10] Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[11] Therefore, an appellate court can determine whether or not there is standing independent of the lower court's determination.[12]

The Nebraska guardianship and conservatorship statutes repeatedly use the language "interested in his or her *welfare*."[13] Section 30-2619 states "any person interested in his or her welfare may petition for . . . appointment of a guardian" when describing who has standing in such proceedings. And § 30-2645 that dictates the circumstances in which a petition for order subsequent to appointment of a conservator states, "[a]*ny person interested in the welfare* of a person for whom a conservator has been appointed may file a petition in the appointing court . . . ." (Emphasis supplied.)

It should be noted that this language differs from the other statutes in chapter 30, article 26, of the Nebraska Revised Statutes and that only the statutes dealing with protected persons use some form of the phrase "person interested in the welfare."[14] A different definition of "interested person" applies to the remainder of the probate statutes in chapter 30.[15]

Therefore, we must determine who may be a "person interested in the welfare," and thus, has standing to challenge guardianships and conservatorships. In *In re Guardianship of Gilmore*, the Nebraska Court of Appeals examined this language.[16] *In re Guardianship of Gilmore* suggested adopting a

---

[10] *Id.*

[11] *McClellan v. Board of Equal. of Douglas Cty.*, 275 Neb. 581, 748 N.W.2d 66 (2008).

[12] See *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002).

[13] § 30-2619 (emphasis supplied). See Neb. Rev. Stat. §§ 30-2633 and 30-2645 (Reissue 2008).

[14] See, e.g., *id.* See, also, *In re Guardianship of Gilmore, supra* note 1.

[15] See Neb. Rev. Stat. § 30-2209(21) (Cum. Supp. 2014).

[16] See *In re Guardianship of Gilmore, supra* note 1.

broad definition of "person interested in his or her welfare."[17] The opinion states:

> Sometimes, persons in need of a guardian or conservator have no relatives or at least none that care. Sometimes, the relatives of such people are prevented from serving the best interests of the protected person by avarice, greed, self-interest, laziness, or simple stupidity. Frequently, a neighbor, an old friend, the child of an old friend, a member of the clergy, a banker, a lawyer, a doctor, or someone else who has been professionally acquainted with the person needing such help will come forward out of simple charity and bring the matter to the attention of the local probate court. Sometimes, unscrupulous relatives need supervision.[18]

Put more simply, the Court of Appeals said the "statutes are worded to allow people without a legal interest to bring the matter to the local court's attention."[19] The Court of Appeals also reasoned that discretion should go to the county judge who determines the proper guardianship: "Of course, the county judge, under the applicable standard of review, can make the determination of whether the petitioner is really interested in the welfare of the person subject to the proceedings."[20]

In *In re Guardianship of Gilmore*, the Nebraska Department of Health and Human Services (DHHS) brought an action seeking to remove the ward's mother as guardian. At the hearing, DHHS presented evidence that the ward's welfare was in danger, including evidence from the ward's doctor and psychologist, the service coordinator for DHHS, and a social worker employed at the ward's school, among other evidence. The mother argued that DHHS did not have standing to bring the action, because DHHS did not qualify as an "interested person" under the guardianship statutes.

---

[17] *Id*.

[18] *Id*. at 882, 662 N.W.2d at 226.

[19] *Id*.

[20] *Id*.

[11] We agree with the reasoning in *In re Guardianship of Gilmore* that, generally, no legal interest in the ward is necessary to contest a guardianship. In contesting a guardianship, an objector must show a true interest or attentiveness to the well-being and protection of the ward. We agree with *In re Guardianship of Gilmore* that guardianships can be challenged by

> a neighbor, an old friend, the child of an old friend, a member of the clergy, a banker, a lawyer, a doctor, or someone else who has been professionally acquainted with the person needing such help . . . com[ing] forward out of simple charity and bring[ing] the matter to the attention of the local probate court.[21]

There, it was determined that DHHS was a proper person to come forward on a guardianship matter. We approve of the Court of Appeals' decision in *In re Guardianship of Gilmore* that DHHS had standing in that case. Particularly convincing in that case is that it is DHHS' primary function to care for those whose health and welfare needs protection. Furthermore, DHHS was able to bring forth testimony of people in personal relationships with the ward and those who were concerned for the welfare of the ward. Such personal attentiveness for the ward's welfare must be shown and can be shown by observations by someone with a relationship with the ward or by proffering any evidence to the court that the ward's protection is in danger.

[12] But the objectors here only argued a financial interest in Barnhart's welfare. We hold that in a guardianship or conservatorship proceeding, where an objector has no concerns for the ward's welfare but only concerns of its own potential financial expectancy, such concerns do not give the objector standing to challenge a guardianship or conservatorship as "any person interested in [the ward's] welfare" under § 30-2619 or § 30-2645.

---

[21] *Id.*

### Standing to Challenge Conservatorship by Financial Interest in Ward

There are limited situations specified by the conservatorship statutes in which a person or entity may have standing to contest a conservatorship on the basis of the objector's own financial interest. Under § 30-2633, "any person who would be adversely affected by lack of effective management of his or her property and property affairs may petition for the appointment of a conservator or for other appropriate protective order." For example, in *In re Guardianship of Gilmore*, a factor in the finding that DHHS had standing to challenge the guardianship and conservatorship was the fact that if the ward depleted his funds, DHHS itself would have to support the ward. The Court of Appeals stated that DHHS had standing to challenge, "particularly when [DHHS] is quite likely to be supplying financial assistance for the ward."[22] Therefore, where the objector has an interest in the welfare of the ward because the objector would have an obligation to support the ward during his or her lifetime if the ward's funds are mismanaged, then that objector would have standing to contest the conservatorship.

[13] Outside of the situation specified in § 30-2633, we have repeatedly explained that a conservatorship proceeding is not an adversarial proceeding. Rather, it is a proceeding to promote the best interests of the person for whom the conservatorship is sought.[23] If we were to allow standing to challenge a conservatorship to any member of the public who is "concerned" about the oversight of an estate, it would lead to absurd results. Permitting will disputes to play out through conservatorship proceedings during the life of a testator is not in the best interests of a ward needing protection.

[14,15] We do not hold that potential beneficiaries of a surviving testator under a will never have standing to contest

---

[22] *Id*.

[23] See *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001).

a conservatorship, but merely that the potential beneficiary designation alone is not enough interest to establish standing to contest a conservatorship. Wills, by their nature, are ambulatory.[24] A beneficial interest in a will does not vest until the testator's death.[25]

In *In re Guardianship & Conservatorship of Borowiak*,[26] the Court of Appeals recognized that the objectors had standing to object to a conservatorship, because the ward had already died, and thus, their beneficial interest under the ward's will had vested. However, the opposite is true where the ward has not yet died, because a beneficial interest in a will has not yet vested. So, even if an objector to a conservatorship has a potential beneficial interest in a ward's will, this is not a vested interest and, therefore, the objector has no legal standing to challenge the will until after the testator's death.

STANDING TO CONTEST GUARDIANSHIP

We find that attentiveness for the ward's personal welfare has not been shown or argued in this case on the bases of the pleadings and arguments at the court's hearings and where the arguments were based on the ward's financial situation.

Unlike *In re Guardianship of Gilmore*, the objecting parties in this case have failed to show that they are altruistically concerned with the best interests of Barnhart. It was abundantly clear from the allegations in the petition and through the transcript of the hearings in the county court that the objectors' primary concern was the financial assets of Barnhart, and not concern for Barnhart's personal well-being.

The objectors' argument from the beginning was that they are interested in the welfare of Barnhart because they are beneficiaries of his will. In their initial objection, they cited that Barnhart's estate "is being depleted and/or wasted" as the

---

[24] See *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994).

[25] See 28 Am. Jur. 2d *Estates* § 275 (2011).

[26] *In re Guardianship & Conservatorship of Borowiak*, 10 Neb. App. 22, 624 N.W.2d 72 (2001).

primary reason for their contest. In the initial objection, the objectors stated they were "without sufficient information and belief regarding the need for a guardian."

The county court then held a hearing on standing and made it abundantly clear that it would make its standing decision on the basis of the hearing. Again, at the hearing on standing, the attorney for the objectors stated that "to be a hundred percent honest with you, I don't know what — how deep the relationship went, but [Barnhart] certainly felt strong enough to make gifts to them."

At oral arguments on appeal, the objectors stated, for the first time, that there was a personal relationship between Barnhart and the objectors, because Barnhart had been a mason throughout his life and a member of the masonic lodges that make up two of the four objectors.

[16] New theories cannot be presented on appeal.[27] At the March 4, 2014, hearing, the objectors had their opportunity to argue that they have personal and altruistic concerns about Barnhart's welfare. But after a thorough reading of the bill of exceptions, the county court did not—and we do not—see any such arguments. It is clear that the objectors' primary concern was for the estate assets of Barnhart. Therefore, we find the objectors have failed to establish that they have standing to challenge a *guardianship* of Barnhart.

### Standing to Contest Conservatorship

[17] Even assuming the objectors are beneficiaries of the will, they still essentially have the same financial interest as any other member in the community until the death of Barnhart. As stated in our holding today, beneficiaries under a will do not have standing to contest a guardianship or conservatorship by virtue of their interests as beneficiaries of the will alone.

Therefore, we affirm the county court's finding that the objectors do not have standing to challenge the conservatorship of Barnhart. In so finding, we also find it was not error

---

[27] See, e.g., *Jessen v. Malhotra*, 266 Neb. 393, 665 N.W.2d 586 (2003).

for the court to accept Alice and Heady as coguardians and coconservators of Barnhart.

### NECESSITY OF FORMAL EVIDENTIARY HEARING

[18,19] A formal "evidentiary hearing" is not necessary before the court makes a finding in a case. The required procedures may vary according to the interests at stake in a particular context, but the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.[28] It is enough that the parties have an opportunity to present evidence.[29] It is not the duty of the court to inform litigants of the evidence they need to submit in order to support their motions.

The parties were given the chance to brief the issue of standing prior to the March 4, 2014, hearing. The parties were notified that the county court intended to make its standing ruling on the basis of the arguments presented at the March 4 hearing. If the parties felt they needed to present evidence prior to a ruling on standing, this was the time to make that need known to the court. We assume that because the court agreed to look at the will in camera, it would have agreed to look at other evidence or factual matters in making its standing ruling. The objectors cannot now argue that there was something more they wanted to assert at the hearing. The fact that they had the opportunity to do so at a hearing is enough.

Further, we make this standing finding independently of the lower court and as a matter of law. We rely on no factual findings pertaining to the objectors' interest under Barnhart's will because even assuming they are beneficiaries under the will, that is not enough to give them standing.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the county court.

AFFIRMED.

WRIGHT, J., participating on briefs.
MILLER-LERMAN, J., not participating.

---

[28] See *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003).

[29] *Id*.